523 So.2d 79 (1988)
Cheryl Myrick CLARK
v.
William Daniel MYRICK.
No. 57301.
Supreme Court of Mississippi.
April 6, 1988.
Thomas J. Lowe, Jr., Jackson, Roy Farrell, Waynesboro, for appellant.
W. Dal Williamson, Pickering & Williamson, Laurel, for appellee.
EN BANC.
SULLIVAN, Justice, for the Court:
On September 25, 1985, William Daniel Myrick (Myrick) petitioned the Chancery Court of Jones County to cite his former wife Cheryl Myrick Clark (Clark) for contempt for refusing to follow visitation terms of their October 25, 1983, Agreed Decree Modifying Former Decree. Clark answered and cross-complained for a modification of the visitation terms and for an increase in child support payments from $750.00 per year to $500.00 per month. After a full hearing conducted on December 12, 1985, the chancellor ordered Clark to comply with the agreed decree visitation provisions and ordered Myrick to pay an additional $500.00 per year in child support. From this decree, Clark appeals assigning as error that:
1. The chancellor was manifestly in error in failing to require payment of $500.00 per month in child support; and
2. The chancellor was manifestly in error in failing to modify the decree to curtail the father's visitation schedule.
These parties had only one child, Laura Elizabeth Myrick (Laura) who was born on September 20, 1978. The parties were divorced on October 30, 1981, and Clark had primary custody of Laura from that date until April 19, 1982, when by modified decree Myrick was given primary custody until October 25, 1983. On October 25, 1983, an agreed decree modifying the prior decree was ordered by the court. The 1983 agreed decree provided that the parents would have joint legal and physical custody of Laura. Clark was to have primary physical custody during the nine months of the school year and Myrick would have visitation rights every other weekend from 6:00 p.m. Friday until 6:00 p.m. Sunday. Myrick *80 would also have visitation with Laura on Easter holidays and Labor Day of even-numbered years; July 4th and Thanksgiving holidays of odd-numbered years; one week at Christmas; Father's Day; three hours on Laura's birthday; one full week during the school year; and, two, four-week visits separated by one week during the summer vacation (during which Clark would have alternate weekend visitation rights). The agreed decree further provided that Myrick would pay $750.00 per year in child support and would be responsible for all of Laura's medical expenses.
From August 9, 1985, until the court ordered temporary visitation on October 4, 1985, Clark denied Myrick his visitation rights. Substantially conflicting testimony was placed before the chancellor as to why it would be in the best interest of the child that the father's visitation schedule be curtailed. The chancellor determined these issues of fact in favor of Myrick and did not curtail his visitation.
The other issue before the chancery court was whether there had been a change in circumstances such that child support should be raised from $750.00 per year to $500.00 per month. Clark and Myrick's incomes were roughly the same in 1983 and 1984. Clark, who works as a dental assistant, had $11,998.73 gross income in 1983. Myrick had $11,494.52. In 1984 Clark's income was $14,684.10 and Myrick's was $14,656.20. Clark's gross income from January 1, 1985 through September 22, 1985, was $7,836.43. Myrick had been laid off from his job at Halliburton for some time until July, 1985. His gross income from July, 1985 through September 28, 1985, was $5,909.74. Laura started the first grade in the fall of 1985. At the time of the 1985 hearing Laura attended a private school. Myrick did not argue that Laura does not deserve this kind of education. Clark submitted to the chancery court an itemized list of Laura's monthly expenses which she testified represented a major increase since 1983. The list of expenses is as follows:

School $ 120.00
School tuition and registration (yearly $732) 61.00
Piano lessons $ 42.00
Dance lessons 28.00
Bus 17.00
Lunch ($3 per day) 62.00
Babysitter after school ($15 wk.) 60.00
Gas ($240)
 ($10 per wk. for piano lessons)
 ($10 per wk. for dance lessons) 80.00
Groceries ($540) 180.00
Transportation ($298) 99.00
Housing ($570 rental value) 190.00
Electric ($145.50) 48.50
Water ($27.00) 9.00
Telephone ($41.76) 13.72
Clothes (Average) 45.00
 _________
 $1,055.22

At the hearing, the $190.00 per month housing expense was seriously questioned and Clark stated that her home is completely paid for but that the $190.00 per month is Laura's share of "the real value of the house." Clark stated further that while no one pays anything for housing, "the house didn't get there by itself." The child's portion of the telephone, electric, gas and transportation expenses were also seriously questioned. Clark explained that the transportation expense of $99.00 per month was her child's share of the monthly payment on her new husband's truck.
At the conclusion of the hearing the chancellor ordered: (1) that Clark comply with the 1983 agreed decree visitation provisions; and (2) that child support payments be increased from $750.00 per year to $1,250.00 per year, payable monthly during the nine months in which Clark has primary custody.

I.

STANDARD OF REVIEW
This Court will not reverse a chancery court's findings of fact where they are supported by substantial credible evidence in the record. Anderson v. Burt, 507 So.2d 32, 36 (Miss. 1987); Norris v. Norris, 498 So.2d 809, 814 (Miss. 1986); Gilchrist Machinery Co., Inc. v. Ross, 493 So.2d 1288, 1292 (Miss. 1986); Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983); Culbreath v. Johnson, 427 So.2d 705, 707-09 (Miss. 1983); Richardson v. Riley, 355 So.2d 667, 668 (Miss. 1978). This is as true of ultimate facts as of evidentiary facts. *81 Norris, 498 So.2d at 814; Gilchrist, 493 So.2d at 1292; Spain v. Holland, 483 So.2d 318, 320 (Miss. 1986); Carr v. Carr, 480 So.2d 1120, 1122 (Miss. 1985); Cheek v. Ricker, 431 So.2d 1139, 1143 (Miss. 1983).
This Court generally will affirm a trial court sitting without a jury on questions of fact unless there is substantial evidence that the court is manifestly wrong. We must examine the entire record and accept
that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact ...
Cotton, 435 So.2d at 685.
The trial court, sitting in a bench trial as the trier of fact, has sole authority for determining the credibility of the witnesses. Hall v. State Ex Rel. Waller, 247 Miss. 896, 903, 157 So.2d 781, 784 (1963).

II.

WAS THE CHANCELLOR MANIFESTLY IN ERROR IN FAILING TO INCREASE CHILD SUPPORT TO $500.00 PER MONTH?
Clark relies on Adams v. Adams, 467 So.2d 211 (Miss. 1985), to support her position that child support should have been raised to $500.00 per month. Adams lists ten changes in circumstances supportive of modification of child support:
(1) increased needs caused by advanced age and maturity of the child;
(2) increase in expenses;
(3) inflation;
(4) relative financial condition and earning capacity of the parties;
(5) the health and special medical needs of the child, both physical and psychological;
(6) the health and special medical needs of the parents, both physical and psychological;
(7) the necessary living expenses of the father;
(8) the estimated amount of income taxes the respective parties must pay on their incomes;
(9) free use of a residence, furnishings, and automobile; and
(10) any other facts and circumstances that bear on the support subject shown by the evidence.
Adams, 467 So.2d at 215.
Clark argues that the itemized list of Laura's monthly expenses clearly indicates increased needs and expenses. Second, Clark argues that Myrick's financial condition and earning capacity in 1985 had improved such that his 1985 gross income was more than double her 1985 gross income. Clark arrives at this conclusion by taking one particular two week paycheck record which included 80 hours of regular time and 110 hours of overtime pay for a total of $1258.98 gross pay, and multiplying that by 26 weeks for a total gross pay of $33,000.00 per year. Clark also argues that Laura's medical needs, resulting from her weight and psychological problems are an additional expense. This need not be considered in an argument for increased child support in this case as, under the 1983 agreed decree, Myrick agreed to pay all of Laura's medical expenses and nothing in the chancery court's 1985 order changes that nor has there been any suggestion that Myrick does not pay all of Laura's medical bills. Last Clark argues that under Section 93-13-1, Mississippi Code Annotated (1972), which charges both parents with the child's welfare, Myrick should be required to pay a minimum of $435.00 per month in child support. Clark arrives at this total by deleting the disputed housing cost and dividing the balance of the monthly expenses equally between both parents.
Myrick attacks the credibility of Clark's list of Laura's monthly expenses, specifically the housing, telephone, electric and transportation costs. Myrick also points out that there was no proof offered at trial of any increase in his earnings since the time of the 1983 decree. The 1985 paycheck relied upon by Clark includes substantial overtime which is not guaranteed. The trial testimony was to the effect that Halliburton, Myrick's employer, intended to make additional layoffs if things did not pick up in the oil business. Myrick also *82 argues that Clark has not demonstrated an increase in expenses because no comparison was made between the child's 1983 expenses and the child's expenses in 1985. While the chancellor found that Laura had started school and this was a change in circumstance that in itself proves nothing except that Laura had started school. The record clearly shows that prior to Laura's entry into the school system she was a student in a day care center. It was incumbent upon Clark to show an increase in expenses due to this change in circumstances and the record is silent on that point. We do not know what it cost to send Laura to the day care center and cannot compare it with what it cost now to send her to the private school.

III.

APPLICABLE LAW
In such cases, the best interest of the child is always the touchstone. Leonard v. Leonard, 486 So.2d 1240, 1242 (Miss. 1986); Adams, 467 So.2d at 215; Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983). In child support modification proceedings the chancellor is accorded substantial discretion and is charged to consider all relevant facts and equities to the end that a decree serving the best interest of the child may be fashioned. Tedford, 437 So.2d at 417. However, there may be no modification in a child support decree absent a substantial and material change in the circumstances of one of the interested parties arising subsequent to the entry of the decree sought to be modified. Cox v. Moulds, 490 So.2d 866, 869 (Miss. 1986). With respect to the issues of fact where the chancellor made no specific finding, this Court proceeds on the assumption that the chancellor resolved all such fact issues in favor of the appellee. Ross v. Brasell, 511 So.2d 492, 495 (Miss. 1987), or at least in a manner consistent with the decree. Tedford, 437 So.2d at 417.
The chancellor found, simply, that the fact that Laura had started school warranted an increase of $500.00 per year in child support payments. This change falls within one or two of the changes in circumstances supportive of modification listed in Adams, 467 So.2d at 215. The chancellor's finding can be viewed as a finding of increased needs of the child or as a finding of increased expenses. The record is silent as to the extent to which Laura's expenses have increased since the 1983 agreed decree other than Clark's conclusory statement that the 1985 monthly expenses represent a substantial increase. Furthermore, as Myrick has suffered layoffs in the past, and, as he is not assured of overtime pay, there is nothing to indicate that there has been a substantial or material change in the relative financial condition or earning capacity of the two parties. Therefore, it does not appear that the chancellor was manifestly in error in refusing to increase Myrick's child support payments to $500.00 per month. That is the error assigned by Clark and that assignment is without merit.

IV.

WAS THE CHANCELLOR MANIFESTLY IN ERROR IN FAILING TO MODIFY THE DECREE TO CURTAIL THE FATHER'S VISITATION SCHEDULE?
In his opinion the chancellor found in part:
It is very obvious to me that you are using the child to fight with each other... . I am not impressed with the testimony I hear from either one of you here today... . As long as you want to keep fighting over your child, your child will have to continue seeing psychiatrists and doctors. My first inclination ... is to put restrictions on it so bad that you could hardly live with it, because this is ridiculous testimony today, coming from two grown people with a child seven or eight years old. But... for me to put restrictions on it is just going to make life more miserable for that child. All it will do is hurt the child... . Based on the testimony before the Court, I don't find any reason whatsoever in this testimony for the mother to have denied the visitation set forth in the agreement . .. *83 I'm going to leave the visitation as it is... . You previously agreed on it.
In cases where the terms of visitation are at issue, our familiar change in circumstances rule has no application. Cox v. Moulds, 490 So.2d 866, 869 (Miss. 1986). This is true because the court is not being asked to change the permanent custody of the child. Cox, 490 So.2d at 869; Sistrunk v. McKenzie, 455 So.2d 768, 770 (Miss. 1984). In Cox, this Court stated:
All that need be shown is that there is a prior decree providing for reasonable visitation rights which isn't working and that it is in the best interest of the children as fostering a positive and harmonious relationship between them and their divorced parents to have custody provisions made specific rather than flexible and attendantly vague.
Cox, 490 So.2d at 869.
Applying this rule to this case, the opposite is also true, to-wit: all that need be shown is that there is a prior decree providing for reasonable visitation rights which is working and which is in the best interest of the child. On visitation issues, as with other issues concerning children, the chancery court enjoys a large amount of discretion in making its determination of what is in the best interest of the child. Harrell v. Harrell, 231 So.2d 793, 797 (Miss. 1970). The specification of times for visitation rights is committed to the broad discretion of the chancellor. Cheek v. Ricker, 431 So.2d 1139, 1146 (Miss. 1983); Buntyn v. Smallwood, 412 So.2d 236, 238 (Miss. 1982).
The chancellor did not expressly find that Laura's best interest would be served by leaving the 1983 agreed decree visitation provisions in effect. He found simply that there was no evidence introduced at the hearing to warrant any change in those earlier visitation provisions. Assuming as we are required to do that the chancellor resolved all fact issues in favor of the appellee, it appears that there was ample credible evidence to support this determination by the chancellor. There was uncontradicted testimony that Laura's displays of displeasure over visitation disappeared within two hours after her arriving at her father's or paternal grandparents' home. There was no evidence, either that Laura was diabetic, or that Myrick and his family were doing anything to promote diabetes. Under our familiar guidelines of review this assignment of error is also without merit.
We are of the opinion that the chancellor was not manifestly wrong in his finding of fact nor did he abuse his discretion and for that reason, the judgment of the lower court is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ANDERSON and GRIFFIN, JJ., concur.
ROBERTSON, PRATHER and ZUCCARO, JJ., dissent.
ROBERTSON, Justice, dissenting:
Cheryl Myrick Clark appeals as too modest a Chancery Court's order that her former husband, William Daniel Myrick, pay increased child support. The majority affirms. Because no one disputes that there was a material change in circumstances, and because in my view the support ordered paid was substantially below any reasonable view of Myrick's obligation to support his daughter, I would reverse and remand.
Child support modification is a two step process.[1] First, the party seeking modification must show that there has been a substantial and material change in the circumstances which existed at the time of entry of the judgment sought to be modified. Cox v. Moulds, 490 So.2d 866, 869 (Miss. 1986); Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983). This rule applies where the original judgment was an agreed judgment, as well as where the judgment sought to be modified was the product of *84 contested litigation. Tedford v. Dempsey, 437 So.2d at 417.
Once the movant has shown a material change in circumstances, the binding effect of the original judgment dissipates. At that point, the Chancery Court considers the question of what child support should be ordered and does so according to criteria generally applicable in fixing the amount of child support. See Adams v. Adams, 467 So.2d 211, 215 (Miss. 1985). The point to be emphasized is this: The amount of (increased or decreased) child support awarded is not necessarily limited by the extent of the change in circumstances. The function of proof of material change in circumstances is to remove the bar or res judicata which prevents relitigation of claims finally decided and, as well, the bar of collateral estoppel which precludes relitigation of issues finally decided. Compare Bias v. Bias, 493 So.2d 342, 345 (Miss. 1986). I trust our affirmance today will not be taken to question these premises.
Here the principal change of circumstances was that Laura started school. This fact, coupled with the general increase in expenses necessary to care properly for the child and coupled further with the modest inflation that took place over those two years, is sufficient to place the finding that there was and has been a material change of circumstances beyond our authority to disturb.
Our next question  the second step  is whether the award of child support in the amount of $1250 a year plus medical expenses was within the Chancery Court's authority, given the evidentiary record before that court.
In reviewing the Chancery Court's decision to fix child support at $1250 per year, we are constrained by familiar limitations upon our scope of review. Yet we leave our wits at home when we entertain the thought that a young school age child may be adequately supported at the rate of $138.89 per month, notwithstanding the mother's mutual support obligation. See Tedford v. Dempsey, 437 So.2d at 421-22; and Miss. Code Ann. § 93-13-1 (1972). I would make no attempt to resolve the various conflicts in the evidence regarding Myrick's resources. Suffice it to say that the evidence reflects without contradiction Myrick's ability to pay child support in an amount substantially in excess of $1250 per year without unreasonable hardship. I am left with the firm and definite conviction that the Chancery Court made a mistake when it made its child support award.
One source of what I perceive to have been the Chancery Court's error appears in a comment made on December 12, 1985. The Court said:
... Seven hundred and fifty dollars a year is not enough child support. The child has started to school. I am going to increase the amount of child support an additional five hundred dollars ($500.00) a year. That's very low. Probably, if it were before me originally, I would set it much higher than that. [Emphasis added]
The Court below appears to have been influenced, at least in part, by the fact that the October 1983 judgment was an agreed judgment. For present purposes a judgment is a judgment is a judgment. Where modification of an agreed child support judgment is sought, that original judgment is entitled to the same respect, and no more, as if it had been entered contested litigation. Compare Taylor v. Taylor, 392 So.2d 1145, 1147-49 (Miss. 1981) (divorce decree); Clements v. Young, 481 So.2d 263, 271 (Miss. 1985) (agreed decree for payment of child's medical expenses enforceable via contempt); Switzer v. Switzer, 460 So.2d 843, 846-47 (Miss. 1984) (separation agreement incorporated into divorce decree enforceable the same as final judgment after contested litigation). Once substantial and material change of circumstances has been shown, the Chancery Court becomes empowered to consider de novo the child support issue.
I would not here fix Myrick's support obligation at any particular amount. Such would be beyond our institutional role. On the record before us, I would have the Court hold that the Chancery Court's decision that Myrick pay to Clark child support at $1250 per year, or $138.89 per month for *85 nine months, is manifestly and clearly erroneous. That award is erroneous in the sense that it is substantially inadequate. On this issue, I would reverse and remand.
PRATHER and ZUCCARO, JJ., join in this opinion.
NOTES
[1] For a description of the analogous two-step process in change of custody cases, see Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss. 1984).