ISHEE, J.,
for the Court.
¶ 1. On February 8, 2005, the Chancery Court of Tate County entered an order denying H.L.S.’s,[1] petition for modification and temporary restraining order. The court denied R.S.R.’s cross-petition for modification of custody, but granted her request for modification of visitation and her request for modification of the divorce decree. The court also cited H.L.S. with contempt for willful denial of R.S.R.’s visitation rights with the parties’ minor child, S.N.S. Aggrieved by the judgment, H.L.S. appeals. Finding reversible error in part, we affirm in part and reverse and remand in part.
FACTS
¶2. H.L.S., the father, and R.S.R., the mother, were married on June 4, 1998. During the course of their marriage, the parties had one child, a daughter named S.N.S., who was born on June 28, 1997. The parties were originally divorced in Tate County, Mississippi on November 20, 2001. Due to a technical error, however, the original judgment of divorce was set aside on December 20, 2002. On March 21, 2003, the Chancery Court of Tate County entered a second judgment of divorce awarding full care, custody, and control of the minor child to H.L.S. R.S.R. was awarded reasonable visitation every first and third weekend from Friday at 6 p.m. to Sunday at 6 p.m., as well as Mother’s Day and six weeks during the summer. The court awarded H.L.S. with visitation every Father’s Day. Regarding each parties’ birthday, and the birthday of their child, the court dictated that “[e]ach parent shall have custody of [S.N.S.] for at least three (3) hours on each of their respective birthdays, regardless of the weekend visitations set out above.” The court further granted the parties alternating holidays from 7 a.m. to 7 p.m., including New Year’s Day, Easter, Memorial Day, July 4th, Labor Day, and Thanksgiving. The parties were also awarded alternating Christmas visitations, however the exact timing was different. On the odd year, H.L.S. was to have S.N.S. from 1 p.m. on December 24 until 3 p.m. on December 25, and then again on December 28 at 1 p.m. until 1 p.m. on January 1. On the even year, H.L.S. was to have S.N.S. at 3 p.m. on December 25 until 3 p.m. on December 30.
¶ 3. On June 29, 2004, H.L.S. filed a petition for modification and for a temporary restraining order alleging that a material change in circumstances affecting the best interest of the child had occurred since the entry of the divorce. Specifical *797 ly, H.L.S. alleged that R.S.R. was unfit to have reasonable visitation with S.N.S. because R.S.R.’s “abnormal behavior” caused S.N.S. to suffer from “an adjustment disorder.” Citing concern for S.N.S.’s safety and welfare, H.L.S. urged the court to grant a temporary restraining order and to suspend further non-supervised visitation.[2]
¶4. On July 8, 2004, R.S.R. filed her answer to H.L.S’s petition for modification and temporary restraining order. She admitted that a material change in circumstances adverse to the best interest of the child had occurred, yet she asserted that H.L.S. was the cause of the material adverse change, as he denied R.S.R. summer visitation with S.N.S. Thus, R.S.R.’s answer also included a cross-petition for contempt and modification of the former decree of divorce. In her cross-petition, R.S.R. requested that the court cite H.L.S. with contempt for his failure to comply with the visitation schedule and order him to pay her attorney’s fees. R.S.R. further requested the court either to grant her full custody of S.N.S. or to modify the visitation schedule, and to order H.L.S. to maintain medical insurance for S.N.S.
¶ 5. On August 17, 2004, the Chancery Court of Tate County entered an order enjoining H.L.S. from denying R.S.R. summer visitation. The court further ordered that the child shall be with R.S.R. or have adult supervision during the visitation. The court also found that R.S.R. would not be restricted to H.L.S.’s choice of daycare providers, but that she should be allowed to use her judgment as to appropriate adult supervision of the child during visitation.
¶ 6. On February 8, 2005, after a hearing, the court entered an order denying H.L.S.’s petition for modification and temporary restraining order. The court determined that the “alleged kissing incident,” as well as other evidence put on by H.L.S., did “not rise to the level required to supervise or restrict visitation.” Regarding R.S.R.’s request for modification of custody, the court determined that H.L.S.’s interference with visitation did not adversely affect the welfare of S.N.S. Nonetheless, the court modified the visitation schedule by awarding R.S.R. alternating spring breaks and Halloweens, as well as every Christmas Day at noon until New Year’s Eve at 7 p.m. The court also found a material change in circumstances and granted R.S.R.’s request for modification of the divorce decree. The court ordered H.L.S. to maintain medical insurance for S.N.S. and both parties to split equally all expenses not covered by the medical insurance. The court also ordered the parties to alternate the dependency tax exemption. Regarding H.L.S.’s interference with visitation, the court determined that, although some of H.L.S.’s denials of visitation were for the child’s protection, some of the denials were willful. Consequently, the court cited H.L.S. with contempt and ordered him to pay R.S.R.’s attorney’s fees in the amount of $1,000.
¶ 7. Aggrieved by the judgment, H.L.S. appeals. He presents the following issues for this Court’s review:
I. Whether the court erred in modifying visitation.
II. Whether the court erred in modifying the dependency exemption.
III. Whether the court should have ordered R.S.R. to reimburse H.L.S. for the $1,200 spent for *798 psychological examination by Dr. Nichols.
IV. Whether the court erred in not restricting R.S.R.’s visitation.
V. Whether the court erred in citing H.L.S. with contempt and ordering him to pay $1,000 in attorney’s fees.
VI. Whether the court erred in requiring H.L.S. to provide health insurance.
VII. Whether R.S.R. is credible.
STANDARD OP REVIEW
¶ 8. Our review of domestic relations matters is limited. Carrow v. Carrow, 741 So.2d 200, 202(¶ 9) (Miss.1999). The chancellor’s findings of fact will not be disturbed on appeal if they are supported by substantial credible evidence. Pacheco v. Pacheco, 770 So.2d 1007, 1009(¶8) (Miss. Ct.App.2000) (citing Dunaway v. Bushin, 498 So.2d 1218, 1221 (Miss.1986)). We will not reverse the decision of a chancery court unless the chancellor abused his or her discretion, was manifestly in error, or applied an erroneous legal standard. Carrow, 741 So.2d at 202(¶ 9) (citing Turpin v. Turpin, 699 So.2d 560, 564(¶ 15) (Miss. 1997)).
ISSUES AND ANALYSIS
I. Whether the court erred in modifying visitation.
¶ 9. When modification of visitation is at issue, the material change in circumstances test is not applicable because the court is not being asked to modify the permanent custody of the child. Haddon v. Haddon, 806 So.2d 1017, 1019(¶ 12) (Miss.2000) (citing Cox v. Moulds, 490 So.2d 866, 869 (Miss.1986)). To modify a visitation order, “it must be shown that the prior decree for reasonable visitation is not working and that a modification is in the best interest of the child.” Ellis v. Ellis, 840 So.2d 806, 812(¶25) (Miss.Ct.App.2003) (citing Suess v. Suess, 718 So.2d 1126, 1130(¶ 15) (Miss.Ct.App. 1998)). The chancellor has broad discretion to determine the specific times for visitation. Haddon, 806 So.2d at 1020(¶ 12) (citing Cheek v. Ricker, 431 So.2d 1139, 1146 (Miss.1983)).
¶ 10. H.L.S. asserts that the chancellor provided for reasonable visitation in the original divorce decree and that visitation did not include Halloween or spring break. He further asserts that there is nothing in the record to suggest that the original visitation schedule was not working. We disagree.
¶ 11. In H.L.S.’s testimony alone, we find substantial evidence that the visitation provision was not working. H.L.S. testified that he denied R.S.R. Memorial Day visitation with S.N.S. in 2003 because he overslept. Moreover, during cross-examination, H.L.S. admitted that he prevented R.S.R. from exercising her six-week summer visitation with S.N.S. during the summers of 2003 and 2004. He also admitted that he denied R.S.R. visitation during May of 2003 because S.N.S. “didn’t want to go.” Furthermore, as H.L.S. concedes in his brief, “[t]here was ample testimony showing that the [parties] did not get along and did not work well together.” H.L.S. further concedes in his brief that “[R.S.R.’s] only complaint was that [H.L.S.] would not let her see her child.” Consequently, we find that the chancellor did not err in modifying the original visitation schedule. This issue is without merit.
II. Whether the court erred in modifying the dependency exemption.
¶ 12. H.L.S. contends that R.S.R. was earning $1,868 per month at the time of the divorce, and that at the time of the hearing in the case at bar, she was earning *799 $2,073.60 per month.[3] Thus, H.L.S. asserts that the record does not show a change in circumstances to warrant a change in the dependency exemption. He further asserts that, because the record does not reflect that the chancellor specifically considered the factors enumerated in Laird v. Blackburn, 788 So.2d 844, 852(¶ 17) (Miss.Ct.App.2001), the chancellor abused his discretion in awarding the splitting of the dependency exemption between the parties.
¶ 13. The court in Laird listed numerous factors that have been considered in determining which party should be awarded the dependency tax exemption, including:
(1) the value of the exemption at the marginal tax rate of each parent; (2) the income of each parent; (3) the age of the child and how long the exemption will be available; (4) the percentage of the cost of supporting the child borne by each parent; and (5) the financial burden assumed by each parent under the property settlement in the case.
Id. (citing Louk v. Louk, 761 So.2d 878, 884 (Miss.2000)). In Laird, the record did not show that the chancellor specifically considered these factors; nonetheless, this Court affirmed the decision of the chancellor to modify the child support agreement to allow Laird to claim the dependency exemption in alternating years. Id. This Court reasoned that there was “not a great discrepancy in the parents’ incomes and the chancellor was well aware of the child support agreement.” Id.
¶ 14. According to H.L.S.’s financial statement, his net monthly pay was $3,096.44 as of March 3, 2003. According to R.S.R.’s financial statement, her net monthly pay was $1,867.22 as of March 5, 2003. Thus, similar to Laird, both parties in the case sub judice are employed and would benefit from use of the dependency exemption. Moreover, although the chancellor did not address each of the Laird factors in his opinion, such an analysis is not mandatory. Consequently, we cannot say that the chancellor abused his discretion in awarding R.S.R. use of the dependency exemption in alternating years. This issue is without merit.
III. Whether the court should have ordered R.S.R. to reimburse H.L.S. for the $1,200 spent for psychological examination by Dr. Nichols.
¶ 15. H.L.S. contends that the parties’ agreed to have Dr. Wyatt Nichols, a psychologist, perform a custody evaluation. H.L.S. further contends that this goal was thwarted by R.S.R.’s husband because he decided that he could not afford to be examined also. According to H.L.S., R.S.R.’s husband refused to be examined because he feared that Dr. Nichols’s opinion would be unfavorable. Thus, H.L.S. maintains that R.S.R.’s husband effectively prevented Dr. Nichols from testifying.
¶ 16. The record shows that R.S.R. set up an appointment for her and S.N.S. to be examined by Dr. Nichols, but that they did not see the doctor because H.L.S. had not given medical authorization. R.S.R. further testified that Dr. Nichols gave her an estimate of the cost of the custody evaluation and that she adjusted her finances accordingly. This estimate included examinations of R.S.R., H.L.S., and S.N.S. only; it did not include an examination of the parties’ spouses. Nonetheless, when H.L.S. and his wife took S.N.S. for an examination by Dr. Nichols, Dr. Nichols examined H.L.S. and S.N.S., as well as *800 H.L.S.’s wife. Furthermore, although H.L.S. maintains that Dr. Nichols would not give his report without examining R.S.R.’s husband, according to R.S.R.’s testimony, Dr. Nichols stated • that he would give his report if the parties would agree to exclude the stepparents.
¶ 17. Based on the foregoing, we find that substantial credible evidence supports the chancellor’s decision not to order R.S.R. to reimburse H.L.S. for the $1,200 spent for psychological examination by Dr. Nichols. This issue is without merit.
IV. Whether the court erred in not restricting R.S.R.’s visitation.
¶ 18. In Cox v. Moulds, 490 So.2d 866, 870 (Miss.1986), the supreme court voiced its concern that by “labeling the rights of the non-custodial parent ‘visitation’ [it implied] an inordinate subordination of those rights in quality.” To prevent such subordination, the court found that chancellors should:
approach the fixing of visitation rights with the thought in mind that, absent extraordinary circumstances militating to the contrary, the non-custodial parent will during the periods of visitation have broad authority and discretion with respect to the place and manner of the exercise of same, subject only to the time constrictions found reasonable and placed in the decree.
Id. The basis for the court’s approach was the premise that “children of divorced parents should be encouraged to have a close, affectionate and, under the circumstances, as normal as possible a parent-child relationship.” Id. Thus, in order for a chancellor to properly impose restrictions on visitation, evidence must be presented that a particular restriction is necessary to avoid harm to the child. Rushing v. Rushing, 724 So.2d 911, 917 (¶ 28) (Miss.1998) (citing Dunn v. Dunn, 609 So.2d 1277, 1286 (Miss. 1992)).
¶ 19. H.L.S. asserts that the court erred in not restricting R.S.R.’s visitation or at least ordering some form of supervised visitation. In support of his argument, H.L.S. primarily points to his testimony, and the testimony of Dr. Leonard, that R.S.R.’s teenage son stuck his tongue into S.N.S.’s mouth while babysitting her in June of 2008. H.L.S. further asserts that the chancellor failed to realize the seriousness of the incident and ignored H.L.S.’s desire to protect his child from further abuse.
¶ 20. Before proceeding, we must note that we are mindful that the chancellor, as the trier of fact, hears the evidence first-hand and is in the best position to make the difficult decisions regarding the issues of witness credibility and the degree of weight to afford the various aspects of the evidence. Matter v. Matter, 914 So.2d 743, 748(¶ 10) (Miss.Ct.App. 2005) (citing Rogers v. Morin, 791 So.2d 815, 826(¶ 39) (Miss.2001)). We are also mindful, however, that the paramount concern in child custody and visitation matters is the best interest of the child.
¶ 21. After examining the record in this case, we are not convinced, as the chancellor was, that the “alleged kissing incident” and other proof put on by H.L.S. did “not rise to the level required to supervise or restrict visitation.” Dr. Leonard testified that he found S.N.S.’s claim that R.S.R.’s son kissed her to be very believable. He further testified that it was his recommendation that S.N.S. has no unsupervised contact with the boy. Thus, taking the best interest of the child into consideration, we find that more weight should have been given to the opinion of the child’s physician, Dr. Leonard. Consequently, we reverse as to this issue and remand for a new trial consistent with this decision.
*801 V. Whether the court erred in citing H.L.S. with contempt and ordering him to pay $1,000 in attorney’s fees.
¶ 22. “A citation for contempt is determined upon the facts of each case and is a matter for the trier of fact.” Strain v. Strain, 847 So.2d 276, 278(¶ 4) (Miss.Ct.App.2003) (citing Milam v. Milam, 509 So.2d 864, 866 (Miss.1987)). A party may be properly cited for contempt when he or she has “willfully and deliberately ignored the order of the court.” Id. (citing Bredemeier v. Jackson, 689 So.2d 770, 777 (Miss.1997)). “Contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than we are.” Ellis, 840 So.2d at 811(¶ 16) (citing Varner v. Varner, 666 So.2d 493, 496 (Miss.1995)). We will affirm a chancellor’s findings in civil contempt matters if supported by substantial credible evidence, unless manifest error is present. Strain, 847 So.2d at 278(¶ 4) (citing Purvis v. Purvis, 657 So.2d 794, 797 (Miss.1994)).
¶23. Referring to the alleged kissing incident, H.L.S. asserts that he was justified in denying R.S.R. visitation because he was trying to protect the best interest of his child. The chancellor did not cite H.L.S. with contempt for the occasions when he prevented visitation out of concern for S.N.S’s best interest. In the citation order, the chancellor found that “some denials of visitation were for the child’s protection and therefore not willful contempt, but other denials were willful.” We find that the record supports the chancellor’s decision. By his own admission, H.L.S. prevented R.S.R. from exercising visitation in May of 2003 because S.N.S. did not want to go, and again on Memorial Day in 2003 because he overslept. Regarding the Memorial Day visitation, H.L.S. testified that he woke up, saw R.S.R. in the driveway, but waited and watched until she drove away. Consequently, we find that the chancellor did not err in citing H.L.S. with contempt.
¶ 24. We further find that the chancellor did not err in awarding attorney’s fees. In contempt actions, “a chancellor has the authority to make the prevailing party whole by awarding attorney’s fees.” Ellis, 840 So.2d at 812(¶ 22) (citing Creel v. Cornacchione, 831 So.2d 1179, 1183-84(¶ 18) (Miss.Ct.App.2002)). “The award of attorney’s fees is largely within the sound discretion of the chancellor.” Id. Therefore, this issue is without merit.
VI. Whether the court erred in requiring H.L.S. to provide health insurance.
¶ 25. H.L.S. argues that R.S.R. showed no change in circumstances warranting a modification of the divorce decree ordering R.S.R. to maintain health insurance for S.N.S. We disagree. R.S.R. testified that, since the judgment of divorce, her salary had decreased from $15 per hour to $13 per hour. She further testified that she had health insurance through her employer at the time of the divorce, but she had since left that job and no longer had access to insurance through her current employer. According to R.S.R., she was paying $40 per month for a health insurance policy for S.N.S., even though H.L.S. was carrying health insurance for S.N.S. through his employer, Smith & Nephew, at no additional cost.[4]
*802 ¶ 26. We find that R.S.R.’s decrease in pay and her inability to secure health insurance from her employer to be a material change in circumstances, sufficient to warrant a modification of the divorce decree. This issue is without merit.
VII. Whether R.S.R. is credible.
¶ 27. In addressing this issue, we note that H.L.S. has failed to support his argument with any authority. The appellant has a duty to provide this Court with authority and support for an assignment of error. Collier v. McCain, 742 So.2d 1202, 1204(¶ 10) (Miss.Ct.App.1999) (citing Williams v. State, 708 So.2d 1858, 1360(¶ 12) (Miss.1998)). Failure to cite any authority may be treated as a procedural bar, and this Court is under no obligation to consider the assignment. Id. Therefore, we decline to address this issue.
¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF TATE COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED IN EQUAL PARTS TO THE APPELLANT AND APPELLEE.
LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES AND ROBERTS, JJ., CONCUR. SOUTHWICK, J., CONCURS IN RESULTS ONLY. KING, C.J., AND IRVING, J., NOT PARTICIPATING.

. In order to protect the identity of the minor child, we are using the parties’ initials rather than their full names.

. During trial, through the testimony of H.L.S. and S.N.S.'s doctor, Dr. Leonard, H.L.S. alleged that R.S.R.’s teenage son, S.N.S.'s half-brother, had stuck his tongue into S.N.S.’s mouth while babysitting her in June of 2003.

. According to the financial statement R.S.R. prepared on March 5, 2003, her total monthly income was $2,359.84, and her net monthly income was $1,867.22.

. Both H.L.S. and R.S.R.'s husband were employed by Smith & Nephew in Memphis, Tennessee.