43 So.3d 1169 (2010)
Joshua Adam STRANGE, Appellant
v.
Amy Melinda STRANGE, Appellee.
No. 2009-CA-00449-COA.
Court of Appeals of Mississippi.
September 7, 2010.
*1170 Mark H. Watts, Pascagoula, attorney for appellant.
Mark Anthony Maples, attorney for appellee.
EN BANC.
KING, C.J., for the Court:
¶ 1. The George County Chancery Court granted Amy Melinda Strange and Joshua Adam Strange a divorce on the ground of irreconcilable differences, divided the marital assets, and ordered Joshua to pay child support. On November 8, 2007, Amy filed a petition seeking modification of the divorce decree. The chancellor ordered Joshua to pay an additional seventy dollars in child support and one-half of the cost of all the minor child's extracurricular activities up to a maximum amount of $350 a year, modified the visitation schedule, held Joshua in contempt for failing to return the child timely from a scheduled visit, and *1171 directed Joshua to pay Amy's attorney's fees because of his contempt of the court order.
¶ 2. Aggrieved by the judgment, Joshua appeals arguing the following three assignments of error: (1) the chancellor erred in denying Joshua's request for standard visitation; (2) the chancellor erred in awarding an increase in child-support payments; and (3) the chancellor erred in awarding attorney's fees. Finding no error, we affirm the chancellor's judgment.

FACTS
¶ 3. Amy and Joshua married on April 11, 1998. During the course of their marriage, the parties had one child, a daughter named Shelby Parker Strange, born April 13, 2001. The family lived together until the couple separated on June 11, 2003. Subsequently, a divorce was sought on the ground of irreconcilable differences. On November 17, 2004, the parties entered into a child-custody and property-settlement agreement. That agreement provided Joshua would pay child support of $360 per month and established a visitation schedule. Thereafter, the chancellor granted Amy and Joshua a divorce on the ground of irreconcilable differences.
¶ 4. On November 8, 2007, Amy filed a petition for modification of the divorce decree requesting that the chancellor modify visitation and the child-support payments. Specifically, Amy requested that the chancellor: (1) prohibit Joshua from having overnight guests to whom he was not related by blood or marriage, (2) divide the four weeks of summer visitation into two two-week visits rather than one four-week visit, (3) increase the amount of child support, (4) require Joshua to be responsible for one-half of the costs of Shelby's extracurricular activities, and (5) require Joshua to provide any and all reasonable necessary school uniforms for Shelby.
¶ 5. The chancellor conducted a two-day hearing on Amy's petition for modification on August 25, 2008, and October 14, 2008. By order filed on October 24, 2008, the chancellor (1) required Joshua to pay one-half of Shelby's extracurricular activities up to the maximum amount of $350 a year; (2) ordered both parties to attend parenting classes at the YMCA in Ocean Springs, Mississippi, within the next six months and certify to the court that they had done the same; (3) divided summer visitation into two two-week visits for the months of June and July; (4) granted Joshua visitation on Memorial Day weekend, Labor Day weekend, and Shelby's birthday; (5) directed that Joshua be allowed to take Shelby to any extracurricular activities, which are scheduled during his periods of visitation; (6) increased the child support paid by Joshua from $360 to $430 per month; (7) found Joshua was in contempt for failing to return Shelby in accordance with the visitation schedule established by the divorce decree; and (8) ordered Joshua to pay Amy $750 in attorney's fees based on his contempt.
¶ 6. On October 27, 2008, Joshua filed a motion for a new trial or, alternatively, to amend the judgment, arguing that the judgment was contrary to the evidence. On November 21, 2008, Amy filed a petition to correct the October 24, 2008, judgment. Amy requested that the chancellor: (1) order Joshua to return Shelby to Amy's home after visitation, (2) restrain Joshua from making or allowing Shelby to be around persons who would threaten to incarcerate Amy for no reason, and (3) restrain Joshua from unilaterally taking action in the future regarding Shelby's medical treatment.
¶ 7. On December 5, 2008, the chancellor held a hearing on Joshua's motion for a new trial or, alternatively, to amend the judgment. By order dated January 30, *1172 2009, and filed on February 4, 2009, the chancellor denied all relief requested by Joshua. However, the chancellor found that Shelby's increased age, increased needs, and increased extracurricular activities, as well as Joshua's increased income, warranted an upward modification of child support. The chancellor ordered the child-support obligation increased from $360 per month to $430 per month and directed Joshua to pay for one-half of the cost of Shelby's extracurricular activities up to $350 per year. All other aspects of the divorce decree remained unchanged.

DISCUSSION

I. Whether the chancellor erred in denying Joshua's request for standard visitation.
¶ 8. "Where a chancellor has made a factual finding on the matter of visitation, this Court will not disturb those findings unless there is no credible evidence, he has committed manifest error or he has applied an erroneous legal standard." Henderson v. Henderson, 952 So.2d 273, 279 (¶ 14) (Miss.Ct.App.2006) (citing Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997)).
¶ 9. Joshua asserts that the chancellor erred in denying his request for standard visitation. Joshua argues that because a non-custodial parent is entitled to reasonable standard summer visitation, which he states is five weeks, then he should be awarded five weeks of visitation. Joshua also contends that he should be awarded the entire Thanksgiving holiday during alternating years.
¶ 10. Joshua's assertions notwithstanding, there has not been created by statute or court decision any standard schedule of visitation. Since there is no standard visitation, it cannot be said that the chancellor abused his discretion by not requiring standard visitation. "Visitation should be set up with the best interests of the children as the paramount consideration, keeping in mind the rights of the non-custodial parent and the objective that parent and child should have as close and loving a relationship as possible, despite the fact that they may not live in the same house." Dunn v. Dunn, 609 So.2d 1277, 1286 (Miss.1992); see Clark v. Myrick, 523 So.2d 79, 83 (Miss.1988) (citations omitted). How best to accomplish this goal is a matter in which the chancellor is accorded great discretion. See Faris v. Jernigan, 939 So.2d 835, 839 (¶ 8) (Miss.Ct.App. 2006).
¶ 11. "To modify a visitation order, `it must be shown that the prior decree for reasonable visitation is not working and that a modification is in the best interest of the child.'" H.L.S. v. R.S.R., 949 So.2d 794, 798 (¶ 9) (Miss.Ct.App.2006) (quoting Ellis v. Ellis, 840 So.2d 806, 812 (¶ 25) (Miss.Ct.App.2003)).
¶ 12. On November 8, 2007, Amy filed a petition for modification of the child-custody and property-settlement agreement. In that petition, Amy asserts that the visitation enjoyed by Joshua should be modified to prohibit overnight guests to whom Joshua is not related by blood and marriage and that the four consecutive weeks of summer visitation should be divided into two two-week visits.
¶ 13. At the hearing, both parties acknowledged that there had been problems with visitation. Among the problems mentioned were summer visitation arrangements, Tuesday visitations, the time and location to pick up and return Shelby, Joshua's ability to take Shelby to her extracurricular activities during his visit, and whether Amy was to look at Joshua as the first option when Shelby needed a babysitter. The chancellor noted that the issue of *1173 overnight guests was moot because Joshua was now married to the non-related female guest that was of concern in Amy's petition for modification. The chancellor found that the friction and hypertechnical bickering by the parties over the specific times and dates in the visitation schedule warranted modification of the current schedule. Therefore, the chancellor modified the schedule so that Joshua would have an opportunity to take Shelby to her extracurricular activities during his visitation and have more time to spend with her on Tuesday afternoons. In addition, the chancellor awarded Joshua visitation on Memorial Day weekend from Friday at 5:00 p.m. to Monday at 6:00 p.m. in even-numbered years, and on Labor Day weekend from Saturday at 6:00 p.m. until Monday at 6:00 p.m. on even-numbered years. Joshua was awarded visitation for Shelby's birthday as follows: the Saturday afternoon after Shelby's birthday from 3:00 p.m. to 6:00 p.m. unless Shelby's birthday falls on a Saturday, then the visitation would occur from 3:00 p.m. to 6:00 p.m. on the Sunday afternoon following Shelby's birthday.
¶ 14. With visitation, as in all matters relating to a minor child, the primary consideration is the best interest of the child. We start from the presumption that where possible, that best interest is served by maintaining a viable relationship with both parents. Therefore, the goal in establishing visitation is to encourage and forge as strong of a bond as possible between the child and the non-custodial parent and between the child and the custodial parent under the least disruptive circumstances. The record indicates this is what the chancellor attempted to do. In doing so, he made findings of fact, which are supported by credible evidence in the record; he did not commit manifest error; and he applied the proper legal standard. Accordingly, we find that this issue is without merit.

II. Whether the chancellor erred in awarding an increase in the child-support obligation.
¶ 15. Joshua asserts the chancellor erred by arbitrarily increasing Joshua's child-support obligation to $430 per month, which exceeds fourteen percent of his adjusted gross income under the statutory guidelines. Joshua argues that there was no proof that Shelby's needs were not being met by the current child-support award of $360 per month. Joshua claims that it was only after both sides rested that opposing counsel raised the issue of increasing the child-support payments and, thus, made the chancellor aware that Joshua's 2007 income tax return indicated an adjusted gross income of $38,162. Joshua contends that in making the change in the child-support obligation, the chancellor failed to make a written or specific finding on the record as to how he arrived at the new amount and its application under the statutory guidelines.
¶ 16. The Mississippi Legislature established in Mississippi Code Annotated section 43-19-101 (Rev.2009), the statutory guidelines for awarding or modifying of child support. There is a rebuttable presumption that the amounts contained in those guidelines are appropriate. However, it must be noted that these guidelines do not establish a ceiling for child support; rather, they represent the floor for what is considered minimally required child support. That presumptive minimal child support is based upon a percentage of the non-custodial parent's adjusted gross income, as defined in Mississippi Code Annotated section 43-19-101(3).
¶ 17. Child support can be modified if there has been "a substantial or material change in the circumstances of one or more of the interested parties." *1174 Caldwell v. Caldwell, 579 So.2d 543, 547 (Miss.1991) (quoting Tedford v. Dempsey, 437 So.2d 410, 417 (Miss.1983)). According to Sessums, a material change in circumstances can be shown by proof of the following: (1) increased needs caused by advanced age and maturity of the children; (2) increase in expenses; (3) inflation factor; (4) the relative financial condition and earning capacity of the parties; (5) the health and special needs of the child, both physical and psychological; (6) the health and special medical needs of the parents, both physical and psychological; (7) the necessary living expenses of the father; (8) the estimated amount of income taxes the respective parties must pay on their incomes; (9) the free use of a residence, furnishings, and automobile; and (10) such other facts and circumstances that bear on the support subject shown by the evidence. Sessums v. Vance, 12 So.3d 1146, 1148 (¶ 4) (Miss.Ct.App.2009) (quoting Tedford, 437 So.2d at 417).
¶ 18. When the parties executed the initial child-support agreement dated November 17, 2004, Shelby was approximately three years and seven months old. When Amy filed the petition for modification, Shelby was six years old, required school uniforms, and was participating in extracurricular activities at school and church. Amy testified that Shelby was involved in dance, year-round gymnastics, and in GA's at church on Wednesdays.
¶ 19. In calculating the increase in child support, the chancellor appears to have incorrectly used the adjusted gross income as defined on Joshua's 2007 income-tax return rather than as that term is defined by Mississippi Code Annotated section 43-19-101(3). While this is error, under the overall facts of this case, we find it to be harmless error. The chancellor found that there had been a material change in circumstances, noting that Shelby was now older with increased needs and increased expenses. Because of these changes, the chancellor found that a deviation from the presumptive minimal level of support was appropriate. He also found that Joshua's income had increased. Therefore, we affirm the chancellor's judgment awarding an increase in child-support payments.

III. Whether the chancellor erred in awarding attorney's fees.
¶ 20. The chancellor found that Joshua had violated the visitation order by failing to timely return Shelby. The court noted that while Joshua's actions were a violation of the visitation order, there was no indication that his actions were done with the intent to violate or frustrate the court's order. Joshua asserts that because his contempt was not found to have been willful, the chancellor erred in awarding attorney's fees.
¶ 21. A party who is forced to seek the intervention of the chancellor to enforce a decree is entitled to recover the reasonable expenses associated with that action. See Chasez v. Chasez, 935 So.2d 1058, 1063 (¶ 17) (Miss.Ct.App.2005). Amy was forced to seek the chancellor's intervention to be sure that the terms of the decree regarding visitation were honored; therefore, as such she should not have to bear the expenses caused by Joshua's actions. Id. Additionally, the chancellor has the discretion to determine and impose an appropriate penalty for contempt whether it be willful or inadvertent. See Patterson v. Patterson, 20 So.3d 65, 73 (¶ 26) (Miss. Ct.App.2009); see also Morris v. Morris, 5 So.3d 476, 493-94 (¶ 44) (Miss.Ct.App. 2008). The record is uncontradicted that Joshua did not comply with the terms of the visitation decree.
*1175 ¶ 22. This Court will not reverse the chancellor's findings of contempt when it is supported by substantial credible evidence as contempt matters are within the sound discretion of the chancellor. Weston v. Mounts, 789 So.2d 822, 826 (¶ 17) (Miss.Ct.App.2001).
¶ 23. We find, based on the credible evidence in the record, that the chancellor not did abuse his discretion in ordering Joshua to pay Amy's attorney's fees. This issue is without merit.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF GEORGE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., BARNES, ISHEE AND CARLTON, JJ., CONCUR. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, ROBERTS AND MAXWELL, JJ.
GRIFFIS, J., concurring in part and dissenting in part:
¶ 25. With respect for the majority's analysis, I disagree as to the modification of child support. I therefore dissent as to Issue II, but I concur with the remainder of the majority's decision.

Whether the chancellor erred in awarding an increase in child support.
¶ 26. Without any detail of the evidence that supports the chancellor's decision to modify the child support, the majority affirms the chancellor's judgment which found a material change of circumstances and increased the amount of child support. I have examined the record and find the evidence does not support either the chancellor's judgment or the majority's decision.
¶ 27. The chancellor entered two orders of import. First, on October 24, 2008, the chancellor ordered an adjustment to the visitation, ordered Joshua Strange to "pay ½ of all extracurricular activities of the minor child with a maximum of $350 per year," found Joshua in contempt for his late return of the child, assessed Joshua attorney's fees in the amount of $750, and ordered Joshua to "pay to Plaintiff, Amy Strange, the amount of $430.00 per month as child support." The chancellor did not include a finding there had been a material change of circumstances that supported the increase in the child-support award.
¶ 28. Next, on January 30, 2009, the chancellor denied Joshua's motion for reconsideration and ruled:
The parties were divorce[d] on November 16, 2004. A Petition for Modification was filed on April 24, 2008. This Court entered an Order on October 24, 2008. The Defendant filed a Motion for Reconsideration on October 27, 2008. A hearing was held on December 5, 2008 on the Defendant's Motion. At the hearing, the Defendant moved the Court to reconsider the Defendant's child support obligation. At the trial, pursuant to Rule 8.05 of the Chancery Rules, the Defendant submitted tax returns from 2007 which showed an adjusted gross income of $38,162.00. The Court, in its Judgment of October 24, 2008, set the child support at $430.00 per month. This amount is below the guidelines, however, the Court required the Defendant, Joshua Strange, to pay an additional $350.00 a year for extra curricular activities. The Court finds that the Plaintiff has met the requirements of Evans v. Evans, 994 So.2d 765 (Miss. 2008) regarding modification of the child support due to the increased needs of the child, she is older, there has been no modification since the divorce in 2004, and the Defendant's income has increased. *1176 The Defendant is directed to pay the additional sums for extra curricular activities and the $430.00 per month child support.
¶ 29. The chancellor's orders constituted a modification of child support. The chancellor raised the monthly child support amount from $360 to $430 and made Joshua pay some additional extracurricular expenses.
¶ 30. I have two concerns with the chancellor's order to modify the child-support obligation. First, the chancellor failed to follow the statutory guidelines, under Mississippi Code Annotated section 43-19-101 (Rev.2009), to determine Joshua's income for purpose of the appropriate child-support calculation. Second, and more importantly, the record does not contain sufficient evidence to support the chancellor's modification of Joshua's child-support obligation.

A. The calculation of Joshua's income was improper.
¶ 31. The chancellor's order determined that Joshua's 2007 tax return "showed an adjusted gross income of $38,162.00." From this amount, the chancellor divided by twelve and multiplied that number by 14% to conclude that the monthly statutory child support should be $445. The chancellor reduced it to $430 because Joshua was required to pay half of the extracurricular activities.
¶ 32. The record does not reveal Joshua's income in November 2004the date of the parties' divorce. Joshua testified that he had an increase in his salary, but there was not precise testimony as to the amount of the increase in his pay. The record does not contain the Uniform Chancery Court Rule 8.05 financial statements that the parties prepared and served in November 2004.
¶ 33. The chancellor's decision was based on Joshua's 2007 income-tax return, which "showed an adjusted gross income of $38,162.00," and applied the 14%, as required by section 43-19-101, to determine the amount of child support. The problem is that the chancellor failed to note the difference in the calculation of "adjusted-gross income" under the federal tax code and "adjusted-gross income" under the child-support guidelines in section 43-19-101.
¶ 34. Section 43-19-101 provides:
(1) The following child support award guidelines shall be a rebuttable presumption in all judicial or administrative proceedings regarding the awarding or modifying of child support awards in this state:

 Number Of Children Percentage Of Adjusted Gross
 Due Support Income That Should Be
 Awarded For Support
 1 14%

. . . .
(2) The guidelines provided for in subsection (1) of this section apply unless the judicial or administrative body awarding or modifying the child support award makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in Section 43-19-103.
(3) The amount of "adjusted gross income" as that term is used in subsection (1) of this section shall be calculated as follows:
(a) Determine gross income from all potential sources that may reasonably be expected to be available to the absent parent including, but not limited to, the following: wages and salary income;....
(b) Subtract the following legally mandated deductions:

*1177 (i) Federal, state and local taxes. Contributions to the payment of taxes over and beyond the actual liability for the taxable year shall not be considered a mandatory deduction;
(ii) Social security contributions;
(iii) Retirement and disability contributions except any voluntary retirement and disability contributions[.]
¶ 35. The record here gives us the following financial information. Joshua's 2007 federal income-tax return reported total income of $41,762. He deducted "alimony paid" of $3,600 to arrive at an adjusted-gross income, for federal income-tax purposes, in the amount of $38,162.[1] He paid federal income taxes of $2,616. Joshua's Mississippi state income-tax return indicated he had paid $1,343 in state taxes. Joshua's 2007 W-2, which was issued by his employer, indicated he had paid $2,634.81 in social-security taxes and $616.27 in Medicare taxes. Thus, according to section 43-19-101(3), the proper calculation of Joshua's 2007 income for child support purposes should have been:

 Total income $41,762.00
 Less: Federal income tax 2,616.00
 State income tax 1,343.00
 Social security tax 2,634.81
 Medicare tax 616.27
 ________
 Subtotal ($ 7,210.08)
 ___________
Adjusted gross income (section 43-19-101) $34,551.92
Multiplied by section 43-19-101 percentage ×.14
Divided by 12 months /12
 ___
Monthly child-support obligation $ 403

¶ 36. Here, assuming a modification was appropriate, the chancellor did not follow the statutory guidelines of section 43-19-101 and miscalculated Joshua's child-support obligation. This Court has ruled previously that a chancellor's failure to adhere to the appropriate statutory guidelines under section 43-19-101 in the calculation of a child-support payment is a sufficient ground for reversal unless the petitioner can demonstrate how adherence to the guidelines would be unjust or inappropriate. Grove v. Agnew, 14 So.3d 790, 793 (¶ 10) (Miss.Ct.App.2009).
¶ 37. I would reverse the modification of child support on the ground that the chancellor failed to follow the statutory guidelines to determine Joshua's adjusted-gross income under section 43-19-101. Assuming that a modification is appropriate, I would remand for the chancellor to properly apply section 43-19-101.

B. There was no evidence to support a material change of circumstances.
¶ 38. The more troubling error, in my opinion, is there was not sufficient evidence for the chancellor to find a material change of circumstances that would permit a modification of Joshua's child-support obligation.
¶ 39. Mississippi law for modification of child support is well settled. The supreme court concisely stated the law in Evans v. Evans, 994 So.2d 765, 770 (¶ 16) (Miss. 2008), stating:
"There can be no modification of a child support decree absent a substantial and material change in the circumstances of one of the interested parties arising subsequent to the entry of the decree sought to be modified." Gillespie v. Gillespie, 594 So.2d 620, 623 (Miss.1992) (citing Caldwell v. Caldwell, 579 So.2d 543, 547 (Miss.1991); Clark v. Myrick, 523 So.2d 79, 82 (Miss.1988); Adams v. Adams, 467 So.2d 211, 214 (Miss.1985)). The change must occur as a result of after-arising circumstances of the parties, not reasonably anticipated at the time of the agreement. Tingle v. Tingle, *1178 573 So.2d 1389, 1391 (Miss.1990); Clark, 523 So.2d at 82; Shaeffer v. Shaeffer, 370 So.2d 240, 242 (Miss.1979). Some of the factors which may be considered in determining whether a material change has taken place include: (1) increased needs caused by advanced age and maturity of the children; (2) increase in expenses; (3) inflation; (4) the relative financial condition and earning capacity of the parties; (5) the health and special needs of the child, both physical and psychological; (6) the health and special medical needs of the parents, both physical and psychological; (7) the necessary living expenses of the non-custodial parent; (8) the estimated amount of income taxes the respective parties must pay on their incomes; (9) the free use of a residence, furnishings, and automobile; and (10) such other facts and circumstances that bear on the support subject shown by the evidence. Adams, 467 So.2d at 215 (citing Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147 (1955)).
¶ 40. Again, the record does not contain the Uniform Chancery Court Rule 8.05 financial statements that the parties prepared and served in November 2004. Neither the chancellor nor this Court can readily compare the income and expenses of the parties in November 2004 and the relevant dates for consideration under the petition for modification to see whether there had been a substantial or material change.
¶ 41. Instead, we must examine the Rule 8.05 disclosures dated August 2009 and the testimony presented. Amy testified that their child was three years old at the time of the divorce and now would like to engage in extracurricular activities such as dance and gymnastics. Her testimony was that the cost of these would increase her expenses by $65 per month. The chancellor's order accounted for this when he ordered Joshua to pay half of the extracurricular activities. There was simply no other testimony to show any increase in expenses.
¶ 42. Amy also testified that her income had increased by approximately $2,400 per year. She testified that this salary increase allowed her to meet all of her expenses and the child's financial obligations. Amy testified that prior to her salary increase she was short approximately $147.22 per month. On cross-examination, Amy admitted that she was able to meet all of her and the child's expenses. Amy's testimony contradicts the primary basis for her petition to increase the monthly child-support payment. The evidence and Amy's testimony indicated an improvement in both Amy's and Joshua's individual financial positions.
¶ 43. After examining the record, I simply find no evidentiary basis to support the modification. When the parties were divorced in 2004, they could have reasonably anticipated that their child would engage in extracurricular activities as she grew older. In my opinion, $65 per month in additional costs cannot be considered "substantial or material."
¶ 44. Mississippi case law requires that a "substantial and material change in the circumstances of the interested parties [has occurred] after the [original divorce decree has been entered]," which supports their petition to modify child support. Gillespie v. Gillespie, 594 So.2d 620, 623 (Miss.1992). The supreme court defines a qualifying "material change" as one that is not reasonably anticipated or foreseeable as a material change in circumstances prior to the time of the original divorce decree. Tingle v. Tingle, 573 So.2d 1389, 1391 (Miss.1990). Even considering the ten factors identified in Evans, 994 So.2d at 770 (¶ 16), I cannot find that the evidence *1179 presented here justifies a modification of an existing child-support award. Indeed, to prevail and receive a modification, Amy needs to demonstrate that her financial responsibilities are so unduly burdened by the "purchase power of the existing child support award" that it fails to meet the current needs of the minor child. Turner v. Turner, 744 So.2d 332, 336 (¶ 17) (Miss.Ct.App.1999). Amy did not meet this evidentiary burden.
¶ 45. For these reasons, I dissent from the majority's decision as to Issue II.
IRVING, ROBERTS AND MAXWELL, JJ., JOIN THIS OPINION.
NOTES
[1] Alimony is not an allowed deduction to adjusted-gross income under section 43-19-101.