SOUTHWICK, J., for the Court:
¶ 1. Dueling contempt motions were filed in Lafayette County Chancery Court in ■ a domestic relations case. Both were found in contempt, but the principal substantive ruling was to revise visitation in a manner favorable to the father, Donald Saunders. The mother, Jeannette Saunders, appeals. She argues that the court misinterpreted the original visitation provisions, that there was inadequate proof of her contempt, that the best interests of the child are disserved by the new visitation, and that visitation should not have been made immediately effective because she filed for reconsideration. We affirm since we find no error in the first three issues; the last issue is moot.
FACTS
¶2. The parties to this appeal have been involved in a contentious legal contest over visitation rights involving their only child and payment of certain financial obligations. Married for over twelve years, Jeannette and Donald Saunders’ divorce became final on March 1, 1995. Mr. Saunders had lived with his parents in Virginia for some time before the divorce while Ms. Saunders resided in Lafayette County, Mississippi. Incorporated into the divorce order was a property settlement, child custody and support agreement. It provided that Donald Saunders would pay $500 per month in child support, provide for one-half of the child’s medical insurance, be equally responsible with the mother for the child’s medical bills not covered by insurance and pay to the mother one-half of then- *1134 outstanding medical expenses of $2,583.58. Mr. Saunders was granted specific visitation and the right to claim the child as a deduction for income tax purposes and to receive proof from his ex-wife of medical expenditures on behalf of the daughter.
¶ 3. The first dispute arose a few months after the divorce. On September 26, 1995, the chancellor entered a judgement finding Mr. Saunders in wilful contempt and ordered him to pay $2,613.93 in arrearage and attorney’s fees. A modification in child support payments was instituted combining the $500 per month in child support with the $63 per month in health insurance premiums. Having determined that Mr. Saunders had in fact been harassing Ms. Saunders, the court significantly limited Mr. Saunders’ contacts with his former wife.
¶ 4. In October of 1995, a show-cause hearing was held. Though Mr. Saunders did not appear, the chancellor relied upon the progress being made in payments and determined that Mr. Saunders should not be incarcerated. Visitation rights were suspended until such time as he purged himself fully of contempt. At the next hearing on November 27, 1995, Mr. Saunders again did not appear but had made further progress on payment. He was adjudged still in contempt and continued to have his visitation suspended. Furthermore he lost his right to declare the child as a deduction for income tax purposes for 1995. Mr. Saunders purged himself of contempt before the next hearing was held. On Jeannette Saunders’ motion, an order to dismiss the action was granted on January 12, 1996. Mr. Saunders’s visitation rights were reinstated.
¶5. Mr. Saunders petitioned the chancery court on July 18, 1996, to have Jeannette Saunders held in contempt for alleged interference with visitation rights and her failure to provide sufficient proof of medical coverage. Mr. Saunders argued that a material change in circumstances arose from his former wife’s failure to act in good faith regarding visitation. He requested a modification of visitation, reimbursement for a number of expenses, and an award of attorney’s fees. Ms. Saunders counter-claimed. She alleged that Mr. Saunders was not complying with child support, medical insurance or medical treatment payment obligations, and was not abiding by the tax deduction ruling nor the orders prohibiting him from harassing her. After a hearing the chancellor found Jeannette Saunders to be in contempt. Mr. Saunders was permitted unsupervised visitation. However, Mr. Saunders was found in contempt for failure to pay his share of the child’s medical premiums. Attorney’s fees were denied to both parties.
DISCUSSION

Issue 1: Trial court’s interpretation of the child support

¶ 6. An issue at trial was whether supervision of Mr. Saunders’ visitation of his young daughter was to end when she became four years old, or instead would continue for four years after the divorce was decreed. Both concepts were mentioned in the parties’ 1995 agreement. The child was born June 7, 1993, while the agreement’s “birth” was March 1, 1995. The agreement provided:
The agreed upon visitation shall be in Oxford, Mississippi, shall be supervised by an adult, and shall include no overnight visitation for four years. After the minor child reaches four (4) years old, visitation shall be in accordance with the Lafayette County standard visitation schedule.
This section of the agreement concluded by stating that if Ms. Saunders moved to Virginia, the standard visitation schedule would apply but “with supervised visitation until the child reaches the age of four (4).” Ms. Saunders has remained in Mississippi and Mr. Saunders in Virginia.
¶7. Thus the agreement stated that no overnight visitation would occur “for four years,” i.e., 1999, but made no reference to a termination date for the requirement of supervision except in the contingency of Ms. Saunders’ moving to Virginia. Until the child was age four Mr. Saunders only had two days a month visitation, scheduled as the parties agreed. When the child became age four, i.e., 1997, or if prior to 1997 Ms. Saunders moved with the child to Virginia, the standard visitation schedule used by Lafayette County chancellors applied. There was *1135 no description of the standard schedule. The chancellor certainly knew the terms of the schedule. Certainly a standard schedule would include overnight visitation periods, both during weekends and longer periods of visitation for holidays and summer. Thus an ambiguity arises since the “standard schedule” permitting overnight visits beginning in 1997 and “no overnight visitation” until 1999 are inconsistent concepts.-
¶ 8. By his decree of July 23, 1997—after the child’s fourth birthday but only two years after the divorce decree was entered—the court imposed a new, more expansive visitation schedule. The court concluded that the briefer and supervised visitation was always due to end when the child became age four. He also found that the hostility between the parents and the interference with the limited visitation rights that the father had before the child’s fourth birthday constituted a material change in circumstances that required a modification of the decree. To some extent the chancellor thereby created two bases for his decree: there was a change in circumstances, and the earlier decree’s actual meaning was that the father would have more liberal visitation after the child—not the decree—reached age four.
¶ 9. The 1997 decree provided the following annual visitation: four specific three-day periods at certain holidays; a two-day weekend in the spring; two 2-week periods in the summer; and a week beginning or ending Christmas day.
¶ 10. On appeal Ms. Saunders alleges that this new 1997 visitation schedule was based on an improper interpretation of the original 1995 decree. The only possible question from the 1995 decree is whether supervision was to continue until four years after the decree. Everything else the chancellor did was consistent with the parties’ agreement that the standard visitation schedule would apply after the child became four on June 7, 1997, six weeks before the decree was entered. Further, the chancellor found that Ms. Saunders’ contumacious interference with visitation was a material change in circumstances. We find adequate if contested evidence to support that finding.
¶ 11. The meaning of terms contained in a divorce agreement is a question of fact. See generally Ellis v. Powe, 645 So.2d 947, 952-53 (Miss.1994) (stating that ambiguous contractual terms present factual questions). The supreme court has stated it “will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard.” Cummings v. Benderman, 681 So.2d 97, 100 (Miss.1996).
¶ 12. The chancellor in 1997 characterized the 1995 decree as providing for liberal and unsupervised visits. He was anchoring this in his conclusion that the requirement of brief supervised visits ended when the child attained the age of four years. This is a reasonable deduction and does not constitute manifest error. Regardless, the chancellor also found a sufficient change in circumstances to permit the visitation schedule to be revised. We find no error.

Issue 2: Ms. Saunders’ contempt

¶ 13. Ms. Saunders argues that she should not have been held in contempt. Appellate issues of evidentiary weight ask whether the verdict of the court is so out measured by contrary evidence that justice could not countenance such a result. We will not “disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Ellis v. Ellis, 651 So.2d at 1068, 1071 (Miss.1995). Viewing the evidence that was introduced in the light favorable to the fact-finding, we see several means by which Ms. Saunders interfered in her former husband’s visits with their daughter. Ms. Saunders remained at a number of visits that were otherwise supervised; she displayed a disruptive attitude during those visits. She refused to allow Mr. Saunders to see the child when the little girl was sick with chicken pox despite that Mr. Saunders had flown down from Virginia. This all supports the chancellor’s finding of contempt.
*1136 ¶ 14. These issues are for the chancellor. He was not in error.

Issue 3: The best interest of the minor child

¶ 15. Mississippi favors maintaining the relationship between a parent and a child even though that parent may be non-custodial. Dunn v. Dunn, 609 So.2d 1277, 1286 (Miss.1992). Ms. Saunders primary argument for restricting her former husband’s visitation is that she claims he suffers from behavioral problems. The chancellor did not find that these allegations were proven. This finding by the chancellor is subject to the same standard of review as other questions of fact. The hostility between these parties should not be understated. The bulk of evidence as to Donald Saunders’ behavior came from Jeannette Saunders’ testimony. Her credibility was highly relevant. The chancellor became convinced that it was Mr. Saunders who had superior credibility.
¶ 16. Ms. Saunders made a number of claims about her former husband’s behavior. However, two witnesses called on her behalf, although speaking of discomfort and concern they felt around Donald Saunders and by no means endorsing him, simply did not substantiate Jeannette Saunders’ more serious claims of threats of harm to her and of kidnaping the child.
¶ 17. We find substantial evidence to support the chancellor’s decision on this question. The best interest of the child is the controlling standard here, which includes the maintenance of relationships with both parents despite the parents’ inability to maintain a civil one with each other. The chancellor’s decision is consistent with that goal. Dunn v. Dunn, 609 So.2d 1277, 1286 (Miss.1992) (finding the best interest of the child is main concern in determining visitation).

Issue U: Application of Civil Rule 62 to domestic cases

¶ 18. Ms. Saunders filed a Rule 59 motion asking the chancellor to grant a new trial or alternatively alter or amend his ruling. She argued that under Rule 62, filing the Rule 59 motion acted as an automatic stay of the chancellor’s order until such time as the chancellor ruled on the motion. In response, Mr. Saunders requested a “Writ of Assistance.” While the chancellor stated he would grant the writ, it later appears in the transcript that visitation was resolved without law enforcement assistance. Ms. Saunders states in her brief that the writ was issued, but we find no such document in the record nor do we find any adverse action against her other than the court denying her Rule 59 motion. Given the foregoing, we find the matter of whether or not Rule 62 applied to be moot.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF LAFAYETTE COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING AND PAYNE, JJ., CONCUR.