939 So.2d 835 (2006)
Kelly R. FARIS, Appellant
v.
Jay L. JERNIGAN, Appellee.
No. 2004-CA-02548-COA.
Court of Appeals of Mississippi.
October 10, 2006.
*837 S. Christopher Farris, attorney for appellant.
Anthony Sakalarios, Hattiesburg, attorney for appellee.
Before MYERS, P.J., BARNES AND ISHEE, JJ.
MYERS, P.J., for the Court.
¶ 1. On November 23, 2004, the Chancery Court of Forrest County issued an order requiring Kelly R. Faris to post a $40,000 ne exeat bond before she could leave the jurisdiction of the State of Mississippi with her daughter for overnight visitation. The chancellor further ordered Faris to pay $40,000 in attorneys' fees and expenses incurred by Jay Jernigan as a result of the protracted litigation instigated by the former. Aggrieved by the chancellor's ruling, Faris appeals raising the following issues:
I. WHETHER THE CHANCELLOR ERRED IN RESTRICTING VISITATION WITH THE MINOR CHILD TO MISSISSIPPI UNLESS FARIS POSTED A NE EXEAT BOND.
II. WHETHER THE CHANCELLOR ERRED IN AWARDING ATTORNEYS' FEES THAT WERE NOT PROPERLY ITEMIZED, CORRECT OR REASONABLE, AND INVOLVED AN AWARD FOR ATTORNEYS' FEES INCURRED IN LITIGATION IN ANOTHER STATE.
¶ 2. Finding no error, we affirm both the restriction on visitation to the State of Mississippi unless Faris posts a $40,000 ne exeat bond and the award of attorneys' fees and expenses in favor of Jernigan in the amount of $40,000.

STATEMENT OF THE FACTS
¶ 3. Kelly Faris and Jay Jernigan were married in March 1993, and their daughter, Sophie, was born in December of that same year. Faris and Jernigan separated in April 1994, and were granted a divorce in January 1995. Primary custody of their minor daughter was originally awarded to Faris, but in November 1998, Jernigan filed a petition to modify custody. On May 25, 2000, the chancellor entered an order permanently reversing primary custody from Faris to Jernigan. Faris appealed the May 25, 2000 reversal of custody to this Court; however, in Jernigan v. Jernigan, 830 So.2d 651 (Miss.Ct.App.2002), we affirmed the chancellor's ruling. This Court upheld the chancellor's findings of fact that Faris made repeated and unfounded allegations against Jernigan of sexual abuse, Faris made material misrepresentations in court and to the Mississippi Department of Human Services, and Faris moved Sophie from one home to another at least five times between the time the divorce was entered and the custody modification hearing. The chancellor found, and this Court concurred, that when cumulatively considered, these facts constituted a material change in the circumstances of the custodial home, the change was adverse *838 to the child, and therefore sufficient to support a modification of primary custody in favor of Jernigan. Id. at 652(¶ 3).
¶ 4. Following the modification of custody, Faris relocated to Atlanta, Georgia. Aware that visitation with her mother would require Sophie to leave the jurisdiction of the State of Mississippi, the chancellor's order modifying custody required Faris to post a $5,000 ne exeat bond. Under the order, Jernigan was to make Sophie available for visitation with Faris by placing Sophie on a plane at the Gulfport airport, bound for Atlanta, Georgia. Faris was to return Sophie to Jernigan at the end of her visitation period in the same manner. On December 1, 2000, in accordance with the visitation order, Jernigan arranged for Sophie to fly to Atlanta for a weekend visit with her mother. Faris, however, failed to return Sophie to Gulfport, as she was required to do. On December 13, 2000, the Chancery Court of Forrest County, Mississippi, entered a contempt order against Faris for wilful violation of the custody and visitation order, and ordered the $5,000 ne exeat bond forfeited to Jernigan.
¶ 5. Faris voluntarily surrendered to Georgia officials, but not before having Sophie examined by a psychologist and a nurse, filing a complaint with Georgia's Department of Family & Children Services, alleging Jernigan sexually abused and molested their daughter, and placing Sophie under the supervision of the DeKalb County Juvenile Court in Atlanta, Georgia, via a deprivation petition. Georgia officials returned Faris to Mississippi where she was incarcerated on the criminal contempt charge from March until August 2001. Faris' incarceration was challenged, but upheld by the Mississippi Supreme Court in Isom v. Jernigan, 840 So.2d 104 (Miss.2003). Sophie, however, remained in the custody of the DeKalb County Juvenile Court from December 2000 until January 2002. While Sophie was wrongfully being held under the supervision of the DeKalb County Juvenile Court, Jernigan was required to pay monthly child support, and incurred significant travel and lodging expenses visiting his daughter. Jernigan incurred even greater expense defending against the litigation in Georgia, and prosecuting the contempt action in Mississippi. Sophie was finally returned to Mississippi and to her father, in January 2002, when the Georgia Court of Appeals vacated the order of the DeKalb County Juvenile Court. The Georgia Court of Appeals found that Mississippi, not Georgia, should have retained jurisdiction over the matter pursuant to the Uniform Child Custody Jurisdiction Act and the Parental Kidnaping Prevention Act. In the Interest of J.S.J., 253 Ga.App. 174, 558 S.E.2d 763 (Ga.Ct. App.2002).
¶ 6. At issue in Faris' current appeal is the chancellor's visitation order restricting Faris' visitation with Sophie to the State of Mississippi, unless Faris posts a $40,000 ne exeat bond, and award of attorneys' fees and expenses to Jernigan also in the amount of $40,000. Since Faris' release in August 2001, the chancellor has allowed Faris restricted visitation with Sophie. This visitation has been periodically amended to allow less restrictive and more frequent visitations, including overnight visitations within the State of Mississippi. On November, 23, 2004, the chancellor issued an order ruling that Faris could not take Sophie out of the jurisdictional boundaries of the State of Mississippi unless she posted a $40,000 ne exeat bond. The chancellor further ordered Faris to pay $40,000 in attorneys' fees and expenses incurred by Jernigan in the litigation that resulted from Faris' violation of the previous visitation order. Faris, who now lives in New Orleans, Louisiana, appeals the *839 chancellor's imposition of the $40,000 ne exeat bond and assessment of attorneys' fees.

LEGAL ANALYSIS
I. WHETHER THE CHANCELLOR ERRED IN RESTRICTING VISITATION WITH THE MINOR CHILD TO MISSISSIPPI UNLESS FARIS POSTED A NE EXEAT BOND.
¶ 7. Faris argues that the chancellor erred in requiring her to post a $40,000 ne exeat bond. She asserts that she cannot financially comply with the restriction and that there is no justification for such a restriction. Jernigan argues that the bond is reasonable, in light of the fact that Faris has previously taken Sophie beyond the jurisdictional boundaries of the State of Mississippi, then refused to return her in violation of a previous visitation order. Jernigan further argues that the bond is reasonable because Faris forfeited a $5,000 ne exeat bond that she was required to post with the court under the previous visitation order, and that amount was grossly insufficient to cover the legal fees and expenses incurred as a result of Faris' contempt.

STANDARD OF REVIEW
¶ 8. The chancellor is granted broad discretion in deciding issues pertaining to visitation. Rogers v. Morin, 791 So.2d 815, 820(¶ 9) (Miss.2001). The appellate court will not reverse a chancellor's findings of fact so long as they are supported by substantial evidence in the record. Harrington v. Harrington, 648 So.2d 543, 545 (Miss.1994) (citing Tedford v. Dempsey, 437 So.2d 410, 417 (Miss.1983)). "When the chancellor determines visitation, he must keep the best interest of the child as his paramount concern while always being attentive to the rights of the non-custodial parent, recognizing the need to maintain a healthy, loving relationship between the non-custodial parent and [her] child." Id. (citing White v. Thompson, 569 So.2d 1181 (Miss.1990)). In Dunn v. Dunn, 609 So.2d 1277, 1286 (Miss.1992), the Mississippi Supreme Court stated that a chancellor's imposition of a restriction on a non-custodial parent's visitation without substantial evidence that the restriction is necessary to avoid harm to the child is "manifest error and an abuse of discretion." Id. Therefore, this Court is cognizant that restrictions on visitation should be imposed on a limited basis. Fields v. Fields, 830 So.2d 1266, 1267-68(¶ 6) (Miss. Ct.App.2002).

DISCUSSION
¶ 9. In the present case, Faris previously refused to return Sophie from a weekend visitation in Atlanta, Georgia. Faris' refusal to return Sophie to Jernigan was a violation of the then existing visitation order, and resulted in Faris' incarceration for contempt and forfeiture of a $5,000 ne exeat bond. Faris placed Sophie in the custody of a Georgia court, where she remained for nearly thirteen months. While in the custody of the State of Georgia, on ultimately unsubstantiated allegations of abuse, Sophie was subjected to numerous physical and psychological examinations as well as deprived of the comfort of her father's home.
¶ 10. Since Faris' release from incarceration on the contempt charge she has been allowed increasingly less restrictive and more frequent visitations. The chancellor determined that it was in the child's best interest to allow overnight visitations with her mother. Sophie is entering adolescence, and will soon have experiences and ponder questions that a mother is best suited to deal with. This determination comports with the court's duty to help maintain a "healthy, loving relationship between *840 the non-custodial parent and [her] child." Harrington, 648 So.2d at 545. However, ever cognizant of Faris' prior disregard for the court's visitation orders, the chancellor's November, 23, 2004 visitation order restricted Faris' overnight visitations with Sophie to the jurisdictional boundaries of the State of Mississippi, unless Faris posts a $40,000 ne exeat bond.
¶ 11. The purpose of the ne exeat bond is to ensure that the orders of the court will not be ignored. Ayers v. Ayers, 734 So.2d 213, 217 (Miss.Ct.App.1999) (citing N. Shelton Hand, Divorce, Alimony and Child Custody § 9-1 (5th ed.1998)). "The bond is not generally issued without satisfactory proof that the party will probably vacate or be absent from the reach of the court, and thus, once subjected to such, either the person or the bond in his or her place, must be available to the court and its processes." Id. Faris lives in New Orleans, Louisiana, and will be taking Sophie outside the court's reach for overnight visitation in her home. The situation is no different than the prior visitation order that Faris violated. In order to ensure compliance with the visitation order and to protect the interests of both the minor child and the father, the chancellor deemed it necessary to impose a ne exeat bond in an amount sufficient to deter future violations of the visitation order.
¶ 12. The chancellor's imposition of a $40,000 ne exeat bond in order for Faris to remove the restriction on visitation to the State of Mississippi was proper under the circumstances and the evidence before him. Further, the amount of the bond was proper in light of Faris' past willingness to forfeit a $5,000 ne exeat bond, and related actions which resulted in Jernigan incurring more than $75,000 in attorneys' fees and other associated expenses. Therefore, we find that the chancellor did not abuse his discretion in requiring Faris to post a $40,000 ne exeat bond, and affirm the order.
II. WHETHER THE CHANCELLOR ERRED IN AWARDING ATTORNEYS' FEES THAT WERE NOT PROPERLY ITEMIZED, CORRECT OR REASONABLE, AND INVOLVED AN AWARD FOR ATTORNEYS' FEES INCURRED IN LITIGATION IN ANOTHER STATE.
¶ 13. Faris argues that the chancellor erred in ordering her to pay Jernigan's attorneys' fees in the amount of $40,000. Faris contends that the fees were incurred by Jernigan during litigation in Georgia, and should be paid by the State of Georgia, who wrongfully retained custody of Sophie. Jernigan argues that Faris' refusal to follow the chancellor's visitation order and related action of turning Sophie over to the custody of the DeKalb County Juvenile Court, without any substantial evidence of wrongdoing on the part of Jernigan, is what caused the fees and expenses to be incurred; thus, the award was proper.

STANDARD OF REVIEW
¶ 14. The chancellor has broad discretion in awarding attorneys' fees. Walters v. Walters, 383 So.2d 827, 828 (Miss.1980). The standard of review is abuse of discretion. Regency Nissan, Inc. v. Jenkins, 678 So.2d 95, 103 (Miss.1995). In determining an appropriate amount of attorneys' fees, the chancellor must consider, in addition to the relative financial ability of the parties, the skill and community standing of the attorney, the nature of the case and novelty of the issues, the degree of responsibility involved, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney as a result of accepting the case. McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). Unless the chancellor's ruling was manifestly *841 wrong, his decision regarding attorneys' fees will not be disturbed on appeal. Ward v. Ward, 825 So.2d 713, 720 (¶ 28) (Miss.Ct.App.2002).

DISCUSSION
¶ 15. Ms. Faris asserts on appeal that the record contains insufficient evidence to support the $40,000 award of attorneys' fees and expenses to Jernigan, and that the chancellor improperly applied the factors for determining the reasonableness of attorneys' fees adopted by the Mississippi Supreme Court in McKee v. McKee, 418 So.2d 764 (Miss.1982), listed supra, and incorporated into Mississippi Rule of Professional Conduct 1.5(a). This Court disagrees. A review of the record indicates that Faris stipulated to the amount of fees incurred in the Georgia litigation, and an itemized bill from one of Jernigan's attorneys, which outlined the charges incurred in the Mississippi contempt action, was submitted to the chancellor for review. There is no evidence in the record that the fees submitted by Jernigan's attorney were unreasonable. The chancellor took no issue with the fees submitted to the court, and neither do we. The case was difficult and time consuming, and the chancellor considered the fees charged to be reasonable. The chancellor is in the best position to determine the reasonableness of the fees, and this Court will not arbitrarily substitute our judgment for his. Mabus v. Mabus, 910 So.2d 486, 488(¶ 7) (Miss.2005) (quoting Tucker v. Tucker, 453 So.2d 1294, 1296 (Miss.1984)).
¶ 16. Furthermore, "where a party's intentional misconduct causes the opposing party to expend time and money needlessly, then attorney[s'] fees and expenses should be awarded to the wronged party." State v. Blenden, 748 So.2d 77, 87(¶ 33) (Miss.1999). In the case sub judice, the chancellor awarded Jernigan $40,000 in attorneys' fees and other expenses incurred in litigation that ensued directly as a result of Faris' violation of the previous visitation order. The chancellor stated that his reason for awarding Jernigan a money judgment was based upon the court's finding that Faris' actions in violating the previous visitation order were punitive in nature and that the fees and expenses incurred by Jernigan were a direct result of her contempt for the court.
¶ 17. In the year following Faris' violation of the previous visitation order and placing of Sophie with the DeKalb County Juvenile Court, Jernigan incurred more than $55,000 in legal fees and related expenses in Georgia, and nearly $20,000 in legal fees and related expenses prosecuting the contempt action in Mississippi. Although the chancellor stated that the bulk of the fees incurred in the Georgia litigation were directly attributable to the Georgia court's failure to promptly dismiss the case, he made it abundantly clear in his ruling that it was Faris' actions in violating the visitation order of the State of Mississippi which triggered the sequence of events that led to the extended litigation in Georgia. Faris' actions forced Jernigan to take legal action both in Georgia and Mississippi, and Jernigan would not have incurred this large amount of attorneys' fees and related expenses had Faris followed the court's order. Therefore, we find that the chancellor did nor err in his assessment of $40,000 in attorneys' fees and related expenses, and affirm the award.

CONCLUSION
¶ 18. There is substantial credible evidence upon which the chancellor relied in support of both the requirement of the $40,000 ne exeat bond and assessment of attorneys' fees and related expenses. Given the substantial evidence in the record, it is clear that the chancellor committed no *842 abuse of discretion. For these reasons, the judgment of the Chancery Court of Forrest County is affirmed.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, AND ROBERTS, JJ., CONCUR.