970 So.2d 267 (2007)
Nolen CASSELL, Jr., Appellant
v.
Mary Lou CASSELL, Appellee.
No. 2006-CA-01001-COA.
Court of Appeals of Mississippi.
December 11, 2007.
*269 James (Jay) R. Foster, attorney for appellant.
James L. Gray, Picayune, attorney for appellee.
Before KING, C.J., BARNES and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. Nolen Cassell, Jr. appeals the Hancock County Chancery Court's decision granting a divorce to Mary Lou Cassell. Nolen argues that the evidence was insufficient for granting the divorce. Nolen also attacks the court's award of supervised, restricted visitation of the couple's two minor children, asserting the visitation award is also without evidentiary support. This Court affirms the chancery court's grant of divorce. However, we vacate and remand on the sole issue of the child visitation determination.

FACTS
¶ 2. Mary Lou and Nolen were married on March 18, 1989, in Delaware County, Pennsylvania, however, at the time of separation, they were both residents of Hancock County, Mississippi. On May 13, 2005, Mary Lou filed a complaint for divorce from Nolen, in the Hancock County Chancery Court, on the grounds of habitual, cruel, and inhuman treatment and, alternatively, for irreconcilable differences. Mary Lou sought temporary and permanent custody of the couple's two minor children, Samantha Cassell (born March 10, 1990), and Amanda Cassell (born July 17, 1991), and child support. In her complaint, Mary requested that Nolen receive restricted, supervised visitation with the children.
¶ 3. On the same day, Mary Lou also filed an ex parte motion for temporary custody and other relief. The court granted Mary Lou temporary sole legal and physical custody of the minor children and restrained Nolen from contacting or harassing Mary Lou or the minor children in any manner until a temporary custody hearing could be scheduled. In placing these restrictions upon Nolen, the court specifically relied on an offense report by a Hancock County Sheriff's deputy regarding Nolen's behavior on May 10, 2005.
¶ 4. On June 1, 2005, Nolen answered Mary Lou's complaint for divorce and filed a counter complaint, alleging habitual, cruel, and inhuman treatment and, alternatively, irreconcilable differences. Nolen requested permanent custody of the children and child support. One month later, on July 1, 2005, the court held a temporary hearing and granted Mary Lou temporary custody of the children. Nolen received restricted, supervised visitation rights. In *270 addition to the restricted visitation, Nolen was ordered to pay child support and undergo anger management classes.
¶ 5. On December 30, 2005, the court granted Nolen's attorney's motion to withdraw from the case and the court set the trial date for March 16, 2006. The court clerk, along with Mary Lou's attorney, sent Nolen notices of the trial date. On February 1, 2006, Nolen filed a motion for continuance. A hearing for the continuance was set for February 17, 2006, but Nolen did not appear and the court denied the continuance.
¶ 6. The divorce was heard on March 16, 2006. Nolen failed to appear at trial. The court granted the divorce to Mary Lou on the grounds of habitual, cruel, and inhuman treatment. Mary Lou received primary physical custody of the children and Nolen maintained the restricted, supervised visitation. The divorce decree was signed on March 23, 2006, and Nolen timely filed this appeal.

STANDARD OF REVIEW
¶ 7. This Court reviews the factual findings of a chancellor under a manifest error standard. Chalk v. Lentz, 744 So.2d 789, 791-92(¶ 7) (Miss.Ct.App.1999). We will not disturb a chancellor's factual findings when supported by substantial evidence, unless we find, with reasonable certainty, that the chancellor abused his discretion, the findings were manifestly wrong, clearly erroneous, or because the chancellor applied an erroneous legal standard. Saunders v. Saunders, 724 So.2d 1132, 1135(¶ 11) (Miss.Ct.App.1998).

DISCUSSION
I. Whether the trial court erred in granting the Cassell's divorce.
¶ 8. The trial court granted Mary Lou a divorce based on the statutory ground of habitual, cruel, and inhuman treatment, as found in Section 93-5-1 of the Mississippi Code Annotated (Rev.2004).
¶ 9. Habitual, cruel, and inhuman treatment requires the non-offending spouse to show that the conduct either (1) endangers his or her life, limb, or health, or that the conduct creates a reasonable apprehension of such danger, making the relationship unsafe for the party seeking relief, or (2) is so unnatural and infamous that it makes the marriage revolting and impossible for the spouse to perform his or her marital duties, thus destroying the basis for the marriage to continue. Cochran v. Cochran, 912 So.2d 1086, 1089(¶ 11) (Miss.Ct.App.2005) (citing Daigle v. Daigle, 626 So.2d 140, 144 (Miss.1993)). The conduct must be habitual, meaning the conduct is so frequent, or continued so long, that one can reasonably conclude the condition is permanent. Holladay v. Holladay, 776 So.2d 662, 677(¶ 64) (Miss.2000).
¶ 10. Divorces granted on this ground are based on conduct that rises to a level above "mere unkindness, rudeness, or incompatibility." Brooks v. Brooks, 652 So.2d 1113, 1124 (Miss.1995). Conduct that includes habitual, false accusations, threats and malicious sarcasm, insults and verbal abuse may establish mental suffering such that the environment destroys the health and endangers the life of the non-offending spouse. Robison v. Robison, 722 So.2d 601, 603(¶ 5) (Miss.1998).
¶ 11. In both his bench ruling and the written judgment, the chancellor merely stated that Mary Lou had proven cruel and inhuman treatment. However, he failed to state with particularity the facts upon which he relied to make this finding. This Court would encourage the chancellors of this State to make specific, rather than conclusory, findings of fact. In the absence of specific findings of fact, *271 if this Court, upon reading the record finds substantial, credible evidence which supports the chancellor's decision, it may affirm. Par Indus., Inc. v. Target Container Co., 708 So.2d 44, 47(¶ 4) (Miss.1998). We find that there is substantial and uncontradicted evidence in the record to support the grant of divorce on the grounds of habitual, cruel, and inhuman treatment.
¶ 12. At trial, Mary Lou testified that Nolen was emotionally and mentally abusive throughout the course of the marriage. According to Mary Lou, Nolen cursed her, called her names, berated her, and kept her diabetes medicine away from her. She testified that her husband also threw things during arguments and, on one occasion, he threw a filing cabinet across the laundry room that barely missed the couple's adult son, Matthew Cassell.
¶ 13. Mary Lou testified that her husband's behavior had an adverse affect on her mental and physical well-being. In June 2004, she experienced an anxiety attack, requiring emergency medical attention, that she attributed to her husband's conduct and all of the stress from the marriage. She also testified that she received psychological counseling during the marriage and was prescribed Lexapro. In addition to suffering from depression, she contemplated suicide during the marriage. Mary Lou testified that her health has significantly improved since the separation.
¶ 14. Matthew provided corroborating testimony regarding the effect of his father's treatment on his mother's health and well-being. He testified that he had last lived with his parents within the two years preceding the divorce hearing. During these times, he witnessed his father's tirades against his mother. He was present during the incident between his father and mother in which his father threw a filing cabinet across the room.
¶ 15. This Court affirms the grant of divorce, finding that this uncontradicted testimony provided substantial, credible evidence upon which the chancellor could have granted Mary Lou a divorce upon the grounds of cruel and inhuman treatment.
II. Whether the trial court erred in awarding Nolen Cassell supervised, restricted child visitation.
¶ 16. Nolen argues that there is no evidence that supports the chancellor's award of restricted, supervised visitation. In the final divorce decree, the court granted Nolen daily telephonic visitation with his two daughters, for a maximum of fifteen minutes each. The court restricted Nolen's physical contact with his daughters to four days a month, in the presence and supervision of his brother-in-law, James McVaugh of New Jersey.[1] Nolen asserts that the evidence failed to establish that he presented a danger to his children, and, at a minimum, he should be granted five weeks of unsupervised visitation in the summer.
¶ 17. Child visitation, and its limitations, are awarded at the chancellor's broad discretion. Harrington v. Harrington, 648 So.2d 543, 545 (Miss.1994). The chancellor must keep the best interest of the child as a paramount concern, while being attentive to the non-custodial parent's rights. Faris v. Jernigan, 939 So.2d 835, 839-40(¶ 8) (Miss.Ct.App.2006). The court should be concerned with the need for the non-custodial parent and child to *272 maintain a healthy and loving relationship. Id. For this reason, it is within the chancellor's power to restrict visitation in situations that present "an appreciable danger of hazard cognizable in our law;" but these restrictions should be imposed on a limited basis. Newsom v. Newsom, 557 So.2d 511, 517 (Miss.1990); Faris, 939 So.2d at 840(¶ 8).
¶ 18. When restrictions are placed on visitation, there must be evidence that the particular restriction is necessary to avoid harm to the child. Cox v. Moulds, 490 So.2d 866, 867-68 (Miss.1986). A lack of this evidence will render the chancellor's restrictions on the non-custodial parent's visitation manifest error and an abuse of discretion. Fulk v. Fulk, 827 So.2d 736, 742(¶ 21) (Miss.Ct.App.2002) (citing Dunn v. Dunn, 609 So.2d 1277, 1286 (Miss.1992)).
¶ 19. The final decree makes no findings as to specific facts which support restrictive visitation. However, as with the divorce, if the record contains substantial, credible evidence to support the chancellor's decision, this Court may affirm. See McClelland v. McClelland, 879 So.2d 1096, 1098 (¶ 13) (Miss.Ct.App.2004) (finding chancellor's failure to make specific findings of fact in adultery case required de novo review by appellate court). Unfortunately, the record before this Court fails to demonstrate that the restrictions on visitation were reasonable or necessary to prevent harm to the minor children.
¶ 20. The sole finding regarding the reasons for restricting visitation is a sentence found in the order granting temporary relief, which reads as follows: "This Court has restricted the visitation rights of Nolen Cassell, Jr. because of his threats to take his minor children and secret[e] them from the plaintiff and this Court, and [because] his past behavior, as observed by the Hancock County Sheriff's deputy, [and] Matthew Cassell, [show] that . . . his behavior demonstrated [he] may pose a danger to his children."
¶ 21. The only testimony as to any threat related to the minor children came from Mary Lou. That testimony given at trial, in response to a question from her attorney, is as follows:
Mary Lou's Attorney: Okay. Has he ever threatened you with your children in any manner?
Mary Lou: He  I had left him back in August of '96. It was right after my mother had come down and gone home and we had an argument and I took the kids and the dog and I left. And I did come back. And I asked him, you know, what would happen if I ever did this again and he told me if I ever, ever took off on him again like that . . . he would take my kids and disappear and I would never see them again.
¶ 22. This testimony refers to a one-time conversation, which occurred approximately ten years prior to the divorce action. There is no testimony that Nolen made any such subsequent statements about taking the children away or that Nolen had ever made any effort, at all, to harm the minor children. Such testimony, standing alone, is too remote to be given credence.
¶ 23. The record does not reflect any testimony given by the deputy sheriff. However, it does contain a sheriff's department offense report, attached to a petition for temporary relief. That offense report refers to conduct by Nolen when Mary Lou was leaving the family home. While describing Nolen as belligerent and uncooperative, it does not suggest that he was a danger to the minor children.
¶ 24. That the relationship between Nolen and Mary Lou was less than amicable *273 is beyond question. However, tensions between the two of them do not establish that Nolen was a danger to the minor children and must have only restricted visitation. For these reasons, we vacate the chancellor's restricted visitation award and remand the case to the chancery court.
¶ 25. THE JUDGMENT OF THE HANCOCK COUNTY CHANCERY COURT GRANTING THE DIVORCE IS AFFIRMED. THE CHILD VISITATION DETERMINATION IS VACATED AND REMANDED TO THE CHANCERY COURT FOR FURTHER PROCEEDINGS. ALL COSTS OF THIS APPEAL ARE ASSESSED IN EQUAL PARTS TO THE APPELLANT AND THE APPELLEE.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Mary Lou lived in Pennsylvania at the time of the divorce. Nolen did not appear at the divorce hearing, but at the time of the temporary hearing, Nolen was a West Virginia resident.