IRVING, J,
 

 for the Court.
 

 ¶ 1. This appeal arises out of a custody agreement between Jeffrey Dale Quick and Tabatha Renee Quick Saint. Jeffrey and Tabatha were married in 1998, and three children were born during their marriage. In 2007, Tabatha and Jeffrey were granted a divorce by the Simpson County Chancery Court. Pursuant to the divorce, the parties agreed that Tabatha and Jeffrey would share joint legal custody of the children, but that Tabatha would have primary physical custody of them. Thereafter, Jeffrey filed a petition for modification of the custody agreement, alleging that a material change in circumstances that affected the children had occurred. Tabatha requested that the case be transferred to Alabama, where she had moved after the divorce. After a hearing that both parties attended, the chancery court declined to transfer the case to Alabama. Thereafter, a hearing was held to adjudicate Jeffrey’s petition. Tabatha refused to attend this hearing on the ground that she had not received notice and that the chancery court did not have jurisdiction over her. Ultimately, the chancery court ordered that: (1) it had continuing jurisdiction over the parties and their children, (2) the
 
 Al-bright
 

 [1]
 
 factors dictated that custody be transferred from Tabatha to Jeffrey, (3) Tabatha be jailed until she delivered the children to Jeffrey, and (4) Tabatha be denied any visitation with the children until such was specifically granted by the chancery court.
 

 ¶ 2. Feeling aggrieved, Tabatha appeals and asserts that: (1) the service of process on her for notice of a January 7, 2008, hearing was insufficient, and that the chancery court therefore lacked personal jurisdiction over her; (2) a chancery court errs when it considers
 
 Albright
 
 factors while only one parent is present; (3) this ease should have been transferred to Alabama; and (4) the chancery court’s January 10, 2008, order, which jailed Tabatha and denied Tabatha visitation with the children, “was inequitable, unfair, not based on the evidence, and created an undue hardship on Tabatha....”
 

 ¶ 3. We find that all of Tabatha’s issues are procedurally barred except for a consideration of issues raised in her Rule 60(b) motion and issues appealed from the court’s final order of contempt. We find that the chancery court properly found no merit to Tabatha’s Rule 60(b) motion; therefore, we affirm. However, we find error in the chancery court’s final order of contempt, which denied Tabatha visitation. Therefore, we affirm in part, and reverse and remand in part for further proceedings consistent with this opinion.
 

 FACTS
 

 ¶ 4. Tabatha and Jeffrey were married on July 18, 1998, separated in September 2005,
 
 [2]
 
 and were granted an irreconcilable differences divorce on March 14, 2007. Three children were born during the
 
 *398
 
 course of their marriage; at the time of the divorce, the oldest child was seven, and the youngest was two. The divorce decree indicates that Tabatha and Jeffrey had “entered into a written CHILD CUSTODY, SUPPORT AND PROPERTY SETTLEMENT AGREEMENT in anticipation of divorce.... ” The decree also “ratified and approved” the agreement.
 

 ¶ 5. The agreement specified that the parties would have joint legal and physical custody of the children, with Tabatha enjoying primary physical custody of the children. The agreement also specified that Tabatha would have visitation every Mother’s Day, and that Jeffrey would have visitation every Father’s Day. The noncustodial parent, Jeffrey, was given visitation “on weekends he is off work.” The agreement also determined a custody schedule for annual holidays, such as Easter, Christmas, and Thanksgiving. The agreement explicitly stated that Jeffrey was “not to remove the minor children from the Central Mississippi area during the first three (3) weekends of visitation at his parents [sic] home.” The agreement further stated that the children would be exchanged in Meridian, Mississippi, after the first three weekends of visitation. Pursuant to the agreement, Jeffrey was required to pay Tabatha eight hundred dollars per month in child support. The agreement distributed the marital property and marital debts, and mandated that alimony would not be received by either party, except that Jeffrey would pay Tabatha two hundred dollars each month in rehabilitative alimony for one year.
 

 ¶ 6. On June 27, 2007, Jeffrey filed a petition for contempt and for modification of the divorce decree. On the same day, a summons was issued to Tabatha by the Simpson County Chancery Clerk. Jeffrey’s petition stated that: (1) he was a citizen of the State of Louisiana;
 
 [3]
 
 (2) Tabatha was a resident of the State of Alabama; (3) Tabatha had refused to allow Jeffrey visitation with the children, thus violating the divorce agreement; (4) there had been a material and substantial change in circumstances that had affected the children; (5) Tabatha had “failed to properly care and provide for the children”; (6) Tabatha had failed to provide a “stable home environment for the children”; and (7) Tabatha had “done things to and with the children” that had “adversely affected the children mentally and/or physically.” The petition requested that: (1) Jeffrey be granted primary physical custody of the children; (2) Tabatha be required to pay Jeffrey’s attorney’s fees; and (3) a temporary hearing be held “to adequately provide for the custody, support[,] and shelter of the parties’ minor children.”
 

 ¶ 7. On July 17, 2007, a proof of service of summons was filed in the chancery court, wherein Jeffrey’s attorney averred that he had served process on Tabatha by registered mail. The associated summons informed Tabatha that a hearing would be held on July 25, 2007, at 9:30 a.m. at the Smith County Chancery Court building in Raleigh, Mississippi. The certified notice was sent on June 27, 2007, and was received by Tabatha on July 2, 2007, according to the return receipt. The hearing that was scheduled for July 25 was ultimately held on August 6, 2007, and Tabatha attended the hearing.
 

 
 *399
 
 ¶ 8. On August 3, 2007, Tabatha filed a motion to transfer jurisdiction of the case to Alabama. In the motion, Tabatha alleged that: a protection order had been entered by the Marshall County Circuit Court in Alabama; she had filed a petition for modification in the same court on May 22, 2007; she had lived in Alabama with the three children for almost two years; and she was remarried and pregnant. Tabatha’s motion requested that, pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), found in Chapter 27 of Title 93 of the Mississippi Code Annotated, the case be transferred to Marshall County, Alabama. The petition also indicated that “the Department of Human Resources in Alabama has begun an investigation into the abuse allegations.” The petition did not specify what was meant by “the abuse allegations,” but an attached petition that had been filed in the Marshall County court stated that Jeffrey had “threatened to kill [Tabatha] and kidnapped one of the minor children herein during one of his scheduled visitations.” An attached affidavit indicated that Jeffrey and Tabatha’s “children were interviewed by the Department of Human Resources!, which] began an investigation into the abuse allegation[s].”
 

 ¶ 9. On September 18, 2007, after an August hearing that both Tabatha and Jeffrey attended, the chancery court entered an order, dated nunc pro tunc to August 9, 2007, denying Tabatha’s motion to transfer the case to Alabama. The chancery court found “that it ha[d] full jurisdiction of the parties and the subject matter in this case and will continue to maintain jurisdiction.” The court entered a second nunc pro tunc order, also dated back to August 9, holding Tabatha in contempt and ordering modification of the divorce decree. The chancery court specifically found that: (1) Tabatha was in contempt of court due to her failure to allow Jeffrey visitation with the children; (2) Tabatha could “purge herself of such contempt by allowing [Jeffrey] to make up his missed ... visitation with his children”; (3) the children would be exchanged “at the Mendenhall Police Department in Mendenhall, Mississippi”; and (4) due to her contempt, Tabatha would be required to pay Jeffrey’s attorney’s fees of $1,800, as well as all court costs.
 

 ¶ 10. Despite the court’s contempt finding and resulting order, Tabatha still did not allow Jeffrey to have his court-ordered visitation with the children. On November 13, 2007, Jeffrey filed a second petition for a finding of contempt and for modification of custody. In the petition, Jeffrey averred that Tabatha had refused to comply with the contempt order and subsequent modification, in that she was still refusing to allow him court-ordered visitation. Jeffrey reiterated his reasons for requesting a modification of custody, and requested that primary physical custody of the children be placed with him. The petition further requested that Tabatha be ordered to pay Jeffrey’s attorney’s fees and court costs. An attached summons, which was issued on November 13, 2007, informed Tabatha that there would be a hearing on January 7, 2008, at 9:30 a.m. in Covington County, Mississippi. A proof of service by Ed Teal, a process server, indicated that Tabatha was served with process by personal service on December 31, 2007. Jeffrey’s attorney also filed a proof of service, indicating that he had sent notice to Tabatha by certified mail. The record indicates that the mailings that were sent to inform Tabatha of the hearing were sent back as “unclaimed.”
 

 ¶ 11. After a January 7, 2008, hearing that only Jeffrey attended, the court entered an order on January 10, 2008, dated nunc pro tunc to January 7, 2008. In the order, the chancery court found that: (1) Tabatha was in contempt due to her failure
 
 *400
 
 to comply with the court’s prior orders; (2) Tabatha was further in contempt due to her refusal to allow Jeffrey to make up his visitation as ordered by the court; (3) a material and substantial change in circumstances had occurred that had an adverse impact on the children; (4) the
 
 Albright
 
 factors had been considered by the court, and that a majority of the factors favored a finding that Jeffrey should have custody of the children; (5) full legal and physical custody of the children be given to Jeffrey; (6) Tabatha would have standard visitation only once she made an appearance before the chancery court; (7) Tabatha would “immediately deliver the parties’ children to [Jeffrey] and the appropriate law enforcement officers shall assist in accomplishing this”; (8) Tabatha would pay Jeffrey $420 each month in child support; and (9) Tabatha would pay attorney’s fees and court costs of $2,597. Tabatha did not appeal this judgment.
 

 ¶ 12. On February 22, 2008, Tabatha filed a motion under Rule 60(b) of the Mississippi Rules of Civil Procedure, requesting relief from the chancery court’s orders. In the motion, Tabatha claimed that the court’s orders were void due to lack of personal jurisdiction, insufficiency of process, and insufficiency of service. The motion suggested that the case be transferred to Alabama. Within a week, Jeffrey submitted a response to Tabatha’s motion, wherein he asserted that the motion was not timely filed and lacked specificity as to Tabatha’s claims.
 

 ¶ 13. On April 16, 2008, Tabatha filed a motion to dismiss and entered a special appearance solely for the purpose of contesting jurisdiction. In the motion, Tabatha claimed that she had received insufficient notice of the January 7 hearing and that the chancery court had no jurisdiction as a result of the UCCJEA. Included with the motion was an affidavit by Tabatha denying that she was served with personal process by Teal on December 31, 2007.
 

 ¶ 14. On May 21, 2008, Tabatha’s motions were heard at a hearing that Jeffrey and Tabatha both attended. At the hearing, Tabatha testified that she had resided in Albertville, Alabama, since November 13, 2005. Tabatha further testified that she had never been served with any papers relating to her case. She explained that she knows Teal and that she observed him following her vehicle in December 2007. When she observed him following her, she testified that she went to her father’s house because she was frightened. Tabatha further testified that, once at her father’s house, she and the children immediately went inside and that her father and her husband would not allow Teal on the property to speak with her. She testified that she next encountered Teal on December 31, 2007, when he again began following her. Tabatha indicated that she pulled into her own driveway this time and informed her husband that Teal was in the driveway. Tabatha also testified that she had filed a complaint with the police due to Teal’s conduct. Tabatha testified that Teal never attempted to speak to her on December 31, and that he threw papers on the ground near her husband before leaving. Tabatha further testified that her family is in Alabama, while Jeffrey’s family lives in Mississippi. Tabatha also testified that, since the August 2007 order of the chancery court, she had not spoken to Jeffrey.
 

 ¶ 15. Teal also testified at the hearing that he attempted to hand the papers to both Tabatha and her husband before dropping them on the ground and informing Tabatha of their location.
 

 ¶ 16. On July 14, 2008, the chancery court entered a judgment, dated nunc pro tunc to May 21, 2008, finding that Tabatha
 
 *401
 
 had been served with process and was in contempt for failure to deliver the children as ordered on January 7, 2008. The court ordered the “Sheriff of Covington County, Mississippi^ to] hold [Tabatha] in his custody until such time as she may be transferred to the Simpson County ... Sheriffs Office[,] and she shall be held in the Simpson County Jail until such time as she turns the children over to [Jeffrey].” The court also ordered that Tabatha would have no visitation with the children unless the court issued an order permitting such, and that Tabatha would have to post a security bond of $7,500 before the court would consider granting visitation. A guardian ad litem, April Taylor, was appointed on behalf of the children. In separate orders dated the same day, the court denied Tabatha’s Rule 60(b) motion and her motion to dismiss.
 

 ¶ 17. Tabatha filed her notice of appeal on July 30, 2008.
 

 ¶ 18. Additional facts, as necessary, will be related in our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 19. We will not disturb the findings of the chancellor unless they are “clearly erroneous or an erroneous legal standard was applied.”
 
 Edmonds v. Edmonds,
 
 935 So.2d 980, 982(¶ 4) (Miss.2006) (quoting
 
 Rennie v. Rennie,
 
 718 So.2d 1091, 1093(¶ 6) (Miss.1998)). “However, [we review] issues of law de novo.”
 
 Id.
 
 (citing
 
 Ellis v. Anderson Tully Co.,
 
 727 So.2d 716, 718(¶ 14) (Miss.1998)).
 

 1. Appealable Claims
 

 ¶ 20. The only notice of appeal that Tabatha ever filed was filed within thirty days of the July 14, 2008, orders, one of which found Tabatha in contempt and required her to post the $7,500 security bond, and the others of which dealt only with Tabatha’s Rule 60(b) motion and her motion to dismiss. Therefore, the only issues that are properly before this Court are those that were raised in those two motions, as well as any issue based on the July 18 order of contempt. We address each of these orders and their effects separately, for the sake of clarity.
 

 a. Order of Contempt
 

 ¶ 21. The July 18 contempt order found that Tabatha had failed to deliver the children to Jeffrey, as was ordered by the chancery court on January 7. As a result, the chancery court ordered: that Tabatha be jailed until she delivered the children to Jeffrey, that she have no visitation with the children, that she should pay for Taylor’s services as guardian ad litem, and that Tabatha would have to pay a $7,500 security bond before the chancellor would consider allowing her to have visitation with the children. The order did not adjudicate the
 
 Albright
 
 factors or grant Jeffrey primary custody of the children, as both had already been done by a prior court order, which Tabatha never appealed. Therefore, the only issues that Tabatha can appeal regarding the contempt order is her jailing, the requirement that she pay for Taylor’s services, her lack of visitation, and the requirement that she post a $7,500 bond. As Tabatha is no longer in jail, any complaint about that aspect of the court’s ruling is moot. As we read Tabatha’s appellate brief, she does not complain about the court’s requirement that she pay for Taylor’s services. Therefore, the only two issues from the contempt order that are still alive are the imposition of the security bond and the court’s refusal to allow Tabatha visitation with her children. We consider both of these issues later in this opinion.
 

 
 *402
 
 ¶22. Tabatha filed her motion to dismiss on April 16, 2008, more than three months after the chancery court entered the order that Tabatha sought to attack in her motion. In the motion, Tabatha asserted that she did not receive notice of the January 7, 2008, hearing, and that the chancery court did not have jurisdiction due to the UCCJEA. Tabatha’s contentions in the motion are procedurally barred, as they are barred by the doctrine of res judicata. Our supreme court recently discussed the doctrine of res judica-ta at some length in
 
 Hill v. Carroll County,
 
 17 So.3d 1081, 1084-85(¶¶ 8-9) (Miss.2009):
 

 “The doctrine of res judicata bars parties from litigating claims ‘within the scope of the judgment’ in a prior action.”
 
 Anderson v. LaVere,
 
 895 So.2d 828, 832 [ (¶ 10)] (Miss.2004). “This includes claims that were made or should have been made in the prior suit.”
 
 Id.
 
 “Res judicata reflects the refusal of the law to tolerate a multiplicity of litigation.”
 
 Little v. V & G Welding Supply, Inc.,
 
 704 So.2d 1336, 1337 [ (¶ 8)] (Miss.1997). “It is a doctrine of public policy designed to avoid the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions.”
 
 Harrison v. Chandler-Sampson Ins., Inc.,
 
 891 So.2d 224, 232 [ (¶ 23)] (Miss.2005) [(quoting
 
 Little v. V & G Welding Supply, Inc.,
 
 704 So.2d 1336, 1337(¶8) (Miss.1997))]. As noted by this Court, the doctrine of res judicata has two primary functions. [“] Under the principle known as [‘]bar,[’] res judicata precludes claims which were actually litigated in a previous action.[”]
 
 Harrison,
 
 891 So.2d at 232 [ (¶ 22)] (citing Jeffrey Jackson & Mary Miller, Encyclopedia of Mississippi Law § 14:6, 350 (2001)).[“]Under the principle known as [‘]merger,[’] res judicata prevents subsequent litigation of any claim that should have been litigated in a previous action.[”]
 
 Id.
 

 ¶ 23. Tabatha raised the issue of the UCCJEA and jurisdiction in August 2007, and the chancery court had a hearing on August 9, 2007, on Tabatha’s motion. Both Tabatha and Jeffrey attended that hearing. Thereafter, on September 18, 2007, the chancery court entered an order finding that it had full jurisdiction over the case and that the case would not be transferred to Alabama. Tabatha did nothing to appeal the September 18 order at the trial or appellate level. Therefore, the issue of whether the chancery court properly had jurisdiction under the UCCJEA had been previously litigated by the parties, and the court’s order finding that it had jurisdiction is a final judgment that has never been appealed. Therefore, res judicata bars Tabatha from attacking the court’s jurisdiction under the UCCJEA.
 

 ¶ 24. As to notice of the January 7, 2008, hearing, the chancery court implicitly found that Tabatha had been served with notice of the hearing when it proceeded on that date without her present. Tabatha did not appeal the resulting order that was entered on January 10, 2008, within thirty days. Therefore, she is also procedurally barred from protesting any alleged lack of notice concerning the January 7 hearing. Tabatha has never asserted that she did not receive notice of the court’s judgment, which was filed on January 10. Furthermore, even if we did not find that res judicata bars this issue, we would still find it without merit, as there is sufficient evidence to support the chancery court’s finding that Tabatha had sufficient notice of the hearing. Although Tabatha contends that she was not personally served with the papers informing her of
 
 *403
 
 the hearing, her testimony differed significantly from Teal’s. Essentially, Tabatha claimed that she had gone into her house and had no personal encounter with Teal on December 31, 2007. Teal, however, testified that he attempted to give the papers to Tabatha and to her husband, and that both refused to accept them. Teal indicated that he then left the papers outside after informing Tabatha of the fact that he was leaving them there. The chancellor was entitled to believe whomever he found more credible. Therefore, we find no error in the chancellor’s finding that Tabatha was personally served with notice of the January 7 hearing.
 

 ¶ 25. There are no remaining appeal-able claims in Tabatha’s motion to dismiss.
 

 c.
 
 Rule 60(b) Motion
 

 ¶ 26. A Rule 60(b) motion may be made on several different grounds: clerical mistakes; newly-discovered evidence, accident, mistake, that a judgment is void, that a judgment has been satisfied, or for “any other reason justifying relief from the judgment.” A motion under Rule 60(b) must be made “within a reasonable time.” Tabatha’s Rule 60(b) motion was filed on February 22, 2008, approximately six weeks after the chancery court entered its order. The motion asserted that the January 10 order of contempt was void “for want fo [sic] personal jurisdiction over Tabatha ...; insufficiency fo [sic] process; and, insufficiency of service or process.” The motion also asserted, without referencing any basis in Rule 60, that Tabatha should be granted relief because she and the children had moved to Alabama. Essentially, the Rule 60(b) motion raised the same grounds as the motion to dismiss.
 

 ¶ 27. We find that the issue of where Tabatha and the children resided, and the resulting implications raised by the UC-CJEA are, as already discussed, barred as res judicata. Furthermore, this complaint does not fall under any of the grounds for relief in Rule 60. There was testimony to the effect that Jeffrey still lived in Mississippi, although he had spent time working in both Texas and Louisiana. Jeffrey testified that his permanent address was in Mississippi; after custody of the children was granted to him on January 10, Jeffrey’s residence became the children’s residence. Tabatha is not entitled to any relief as a result of her residence in Alabama.
 

 ¶ 28. The only issue left to consider is whether the January 10 order is void as a result of any lack of process on Tabatha. As discussed above, Teal explained to the chancery court how he served the papers on Tabatha. Despite her contention that events occurred differently, the chancery court was entitled to believe Teal instead of Tabatha. Therefore, as already discussed, we find no error with the court’s finding that Tabatha received notice of the January 7 hearing. Furthermore, as for any allegation that the chancery court had no personal jurisdiction over Tabatha, it is uncontradicted that Tabatha appeared before the court on August 9, 2007, and submitted to the court’s jurisdiction. There is nothing in the record to indicate that Tabatha’s August 9 appearance was a special appearance solely to contest jurisdiction. Therefore, there is no merit to Tabatha’s contention that the January 10 order is void.
 

 ¶ 29. Essentially, the only claims that Tabatha makes that we must address are whether the court erred in denying Tabatha any visitation and whether the court erred in requiring her to post a $7,500 security bond.
 

 2. Visitation
 

 ¶ 30. In granting or denying visitation, a chancellor’s primary concern
 
 *404
 
 must be the best interest of the child, while still considering “the rights of the non-custodial parent, recognizing the need to maintain a healthy, loving relationship between the non-custodial parent and his child.”
 
 Harrington v. Harrington,
 
 648 So.2d 543, 545 (Miss.1994) (citing
 
 White v. Thompson,
 
 569 So.2d 1181, 1185 (Miss.1990)). Furthermore, “there must be evidence presented that a particular restriction on visitation is necessary to avoid harm to the child before a chancellor may properly impose the restriction.”
 
 Id.
 
 (citing
 
 Dunn v. Dunn,
 
 609 So.2d 1277, 1286 (Miss.1992)).
 

 ¶ 81. We find that the chancellor abused his discretion in refusing to award any visitation to Tabatha. There is no indication that there was any impending harm to the children sufficient to justify a complete denial of visitation to Tabatha. Given that visitation should be considered with the best interests of the children in mind, Tabatha’s continual refusal to abide by court orders should be considered only to the extent that that refusal impacts the best interests of the children. Therefore, we reverse and remand to the chancery court. On remand, the chancery court must grant visitation to Tabatha, on whatever conditions the court finds are necessary to protect the interests of the children. For example, the chancery court could order that visitation take place in Mississippi, or that visitation be restricted and carefully supervised. In making any determination regarding visitation, the court must ultimately make the best interests of Tabatha and Jeffrey’s children its primary concern.
 

 3. Security Bond
 

 ¶ 32. We also remand the issue of the security bond to the chancery court. The use of a bond in visitation cases is not unheard of in Mississippi.
 
 Rakestraw v. Rakestraw,
 
 543 So.2d 174, 176-77 (Miss.1989);
 
 Roberts v. Fuhr,
 
 523 So.2d 20, 26-27 (Miss.1987);
 
 Case v. Stolpe,
 
 300 So.2d 802, 803-05 (Miss.1974);
 
 Faris v. Jernigan,
 
 939 So.2d 835, 839-40 (¶¶ 10-12) (Miss.Ct.App.2006). In
 
 Rakestraw,
 
 Bobby Rakestraw “absconded from the State of Mississippi with [his] two young children ... and evaded apprehension for a period of seventeen months.”
 
 Rakestraw,
 
 543 So.2d at 176. In affirming the restrictions that the chancellor placed on Rakestraw, including a ne exeat bond, the Mississippi Supreme Court found that: “Without question, the chancellor was authorized to limit visitation in an effort to insure that the children remained in the state....”
 
 Id.
 
 In
 
 Faris,
 
 this Court affirmed a chancellor’s imposition of a $40,000 bond on a mother who had refused to return her child after a weekend visitation.
 
 Faris,
 
 939 So.2d at 839-40 (¶¶ 9-10). In so ruling, we discussed the purpose of requiring a bond in such cases:
 

 The purpose of the ne exeat bond is to ensure that the orders of the court will not be ignored.
 
 Ayers v. Ayers,
 
 734 So.2d 213, 217 (Miss.Ct.App.1999) (citing N. Shelton Hand,
 
 Divorce, Alimony and Child Custody
 
 § 9-1 (5th ed.1998)).
 
 “The bond is not generally issued without satisfactory proof that the party will probably vacate or be absent from the reach of the court, and thus, once subjected to such, either the person or the bond in his or her place, must be available to the court and its processes.” Id.
 
 Faris lives in New Orleans, Louisiana, and will be taking [the child] outside the court’s reach for overnight visitation in her home. The situation is no different than the prior visitation order that Faris violated. In order to ensure compliance with the visitation order and to protect the interests of both the minor child and the father, the chancellor deemed it necessary to impose a ne exeat bond in an
 
 *405
 
 amount sufficient to deter future violations of the visitation order.
 

 Id.
 
 at 840(¶ 11) (emphasis added).
 

 ¶ 38. In the present case, Tabatha refused to deliver the children to Jeffrey for his regularly-scheduled visitation, and further refused to relinquish custody of the children after the court ordered that Jeffrey have custody of them. However, as we are remanding this case, we direct the chancellor to reconsider the imposition of the $7,500 bond and whether the bond is necessary to insure that Tabatha return the children to Jeffrey. We find that bond should be required only if there is a substantial risk that necessitates such an imposition, taking into account whatever other restrictions the chancellor imposes on Tabatha’s visitation with the children.
 

 ¶ 34. THE JUDGMENT OF THE SIMPSON COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEE.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ, CONCUR.
 

 [1]
 

 . The seminal case on child custody in Mississippi is
 
 Albright v. Albright,
 
 437 So.2d 1003, 1005 (Miss.1983), which contains a list of factors that courts must use to make custody determinations.
 

 [2]
 

 . This date is given in the court’s divorce decree; however, the agreement entered into by Tabatha and Jeffrey pursuant to the divorce states that they separated in September 2006.
 

 [3]
 

 . Although Jeffrey’s motion stated that he was a citizen of Louisiana, testimony indicates that this statement was misleading. Jeffrey testified that he is a resident of Mississippi, and that his permanent residence is in Mississippi, but that his job requires him to make frequent extended trips out of town. He testified that he has worked in Louisiana and Texas.